EXHIBIT A

## COLUMBIA UNIVERSITY
### IN THE CITY OF NEW YORK

OFFICE OF EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION

January 25, 2024

Denise Ferris
Sent electronically to df2760@columbia.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2023270602

Dear Denise Ferris,

Thank you for taking the time to meet with me. During our meetings, you alleged that Hany Ayoub engaged in conduct amounting to sex discrimination. As such, EOAA will conduct an investigation in which you are identified as the Complainant and Hany Ayoub is the named Respondent. Specifically, you alleged the following:

- In approximately January 2023, Respondent yelled at Complainant during a meeting in front of several staff members, whereas Respondent had not criticized a male Associate Vice President in front of other staff members;
- In approximately March 2023, Respondent yelled at Complainant and her female direct report and questioned their integrity regarding a search process for a consultant;
- In approximately March 2023, Respondent suggested that Complainant revisit the due diligence process for the selection of a consultant, which undermined her ability to conduct this type of search process and her expertise in this area;
- In approximately April 2023, Respondent decided to renegotiate a contract that Complainant had previously negotiated, which diminished her authority in front of vendors to negotiate contracts of this type;
- From approximately July 2023 to September 2023, Respondent insisted that a male Project Director participate in the selection process for a consultant for design and construction services for Site 6 and provide equal input to Complainant;
- In approximately August 2023, Complainant learned that a male Executive Director would be covering for Respondent during an Executive Staff Meeting while Respondent was away from the office, even though the prior practice was to ask an Associate Vice President to cover this meeting;
- In approximately December 2023, Respondent reprimanded Complainant and copied several colleagues on the email correspondence;
- From approximately February 2023 to December 2023, Respondent canceled or abbreviated some of Complainant's one-on-one meetings; and

- In approximately August 2023 and September 2023, Respondent provided Complainant with a negative performance review, despite Complainant receiving a positive performance review from her prior supervisor, and to date she has not received any additional feedback from Respondent or entered into any discussions she expected about her salary.

These allegations implicate the *Office of Equal Opportunity and Affirmative Action Policies and Procedures* (the "Policy" which is attached). The Respondent will be notified of the complaint and ensuing investigation at this time. Please be advised that EOAA's investigation of your allegations is not an indication that the Respondent engaged in a violation of the Policy. A determination will be made at the conclusion of a thorough and impartial investigation.

It is the goal of EOAA to complete its investigation within 120 days from this date of the formal investigation notice. You will receive a status update at 60 days and every 30 days thereafter. In order for EOAA to meet this goal, it is imperative that you promptly respond to all correspondence, provide detailed, complete information and any updated information as soon as you become aware, and alert EOAA to any circumstances that may prolong the process. EOAA may extend the timeframe of its investigation at the request of the parties or the investigator(s) for good cause. If a delay or extension occurs, EOAA will notify the parties in writing of the cause of such delay or extension.

As we discussed during our meeting, the Policy prohibits retaliation. Retaliation is any adverse action or threatened action, taken or made, personally or through a third party, against an individual (or group of individuals) because of his or her participation in any manner in an investigation or proceeding under the Policy, including individuals who file a third-person report and those who are interviewed or otherwise provide evidence in the investigation (witnesses). Retaliation is treated very seriously by the University and can result in an additional charge. Please notify EOAA immediately if you believe that you are subjected to retaliation.

Attached is a list of available resources and a Bill of Rights for your review. Please be in touch with any questions and/or concerns.

Best regards,

Sarah Walton Kinney
Associate Director

CC: Steven Storch



# COLUMBIA UNIVERSITY
## Equal Opportunity and Affirmative Action

# EOAA POLICIES & PROCEDURES



Updated September 14, 2023



# COLUMBIA UNIVERSITY
## OFFICE OF EQUAL OPPORTUNITY & AFFIRMATIVE ACTION
## POLICIES & PROCEDURES

## TABLE OF CONTENTS

INTRODUCTION ............................................................................... 3

EOAA DISCRIMINATION & HARASSMENT POLICIES ............................................. 5

Prohibited Conduct ............................................................................. 5

Prohibited Conduct Defined ................................................................... 7

Columbia's Duty to Report & Duty to Act Policies ....................................... 16

Columbia's Romantic & Sexual Relationship Policies ...................................... 18

Accommodation Policies ....................................................................... 19

EOAA DISCRIMINATION & HARASSMENT PROCEDURES *Complaint, Resolution, Investigation, Adjudication, & Appeal* ...................................................... 21

How to Report Prohibited Conduct ........................................................... 21

What Happens When You Make a Complaint? .................................................. 23

How Does EOAA Resolve Complaints? ......................................................... 26

The EOAA Investigative Process .............................................................. 29

EOAA Appeal Process ........................................................................... 35

INTERIM TITLE IX GRIEVANCE PROCESS ....................................................... 37

How to Report Prohibited Title IX Conduct ................................................. 37

What Happens When You Make a Title IX Report? ............................................ 39

Filing a Title IX Formal Complaint .......................................................... 41

Title IX Grievance Process Notice Requirements ........................................... 42

Title IX Formal Complaint Review ............................................................ 43

Appeal of Title IX Formal Complaint Dismissal for Title IX Purposes .................. 46

Title IX Grievance Process Timeframe ....................................................... 47

Title IX Informal Resolution ................................................................. 47



**Title IX Party Advisors and Their Role in the Title IX Grievance Process** ............................ **48**

**Title IX Investigation Process** ................................................................................ **51**

**Title IX Grievance Hearing** .................................................................................... **56**

**Title IX Determinations and Title IX Sanctions** ......................................................... **62**

**Title IX Appeal of Determination** .......................................................................... **65**

**Record Keeping** ...................................................................................................... **67**

**OTHER REPRESENTATIONS** ............................................................................... **68**

**University Authority/Amendments** .......................................................................... **68**

**No Conflicts of Interest or Bias** .............................................................................. **68**

**Training & Education** ............................................................................................... **68**

**Designees** ................................................................................................................... **68**

**APPENDICES** ........................................................................................................ **69**

**Appendix A: Applicable Policies and Procedures** .................................................... **69**

**Appendix B: University Contacts** ............................................................................. **70**

**Appendix C: Resource List** ...................................................................................... **72**

**Appendix D: Complainants and Respondents Rights** ............................................... **75**

**Appendix E: Students' Bill of Rights** ....................................................................... **77**

**Appendix F: Statement of Compliance with Federal, State, and Local Laws Promoting Equal Opportunity, Prohibiting Discrimination and Harassment, and Authorizing Affirmative Action** ................................................................................................... **78**

**Appendix G: Legal Protections And External Remedies** .......................................... **81**



# EOAA POLICIES & PROCEDURES

## INTRODUCTION

Columbia University is committed to providing a learning, living, and working environment free from discrimination and harassment and to fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members. Each individual has the right to work and learn in a professional atmosphere that promotes equal employment opportunities and prohibits discrimination and harassment. All employees, applicants for employment, students, interns (paid or unpaid), contractors and people conducting business with the University are protected from prohibited conduct.

The Office of Equal Opportunity and Affirmative Action Policies and Procedures ("EOAA Policies & Procedures") are designed to establish a non-discriminatory work and educational environment and to meet relevant legal requirements, including: Titles VI and VII of the Civil Rights Act of 1964; Title IX of the Education Amendments Act of 1972; relevant sections of the Violence Against Women Reauthorization Act; the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination in Employment Act of 1967, New York State Education and Human Rights Laws, and New York City laws that prohibit discrimination on the basis of certain enumerated categories.

The University does not tolerate discrimination, harassment, sexual assault, domestic violence, dating violence, stalking, or sexual exploitation and all such conduct is forbidden by University Policy. The University strongly encourages those who have experienced, witnessed, or become aware of conduct that violates EOAA Policies & Procedures to come forward promptly so that the University can take appropriate steps to prevent such conduct from occurring in the future and to ameliorate its effects. The University will protect the privacy of those who come forward to the extent possible and permissible by law.

*Nothing in EOAA Policies & Procedures shall be construed to abridge academic freedom and inquiry, principles of free speech, or the University's educational mission.*

**EOAA Policies & Procedures include:**
- **Columbia University's Discrimination & Harassment Policies:** These policies identify conduct prohibited by the University and defines the prohibited conduct. This section also includes the University's Duty to Report and Managers & Supervisors Duty to Report & Act policies, Columbia's Romantic & Sexual Relationship policies, and accommodation policies. *All information related to Title IX is included in shaded text boxes.*



- **Columbia's Complaint, Investigation, Adjudication, and Appeals Procedures:** This section spells out the complaint, resolution, investigation, discipline, and appeals processes for incidents where University employees or third Parties are accused of misconduct. *Conduct that is covered by Title IX will be addressed through the Interim Title IX Grievance Process.*

- **Interim Title IX Grievance Process:** This section describes the interim process that will be used solely for complaints, investigations, adjudication, and appeals of matters where employees or third Parties are accused of misconduct covered by the recently released regulations under Title IX of the Education Amendments Act of 1972 ("Title IX"). Conduct that may violate Title IX includes sexual harassment, sexual assault, stalking, sexual exploitation that constitutes Title IX sexual harassment, dating violence, and domestic violence as defined by Title IX. This conduct must occur in the United States and in an education program or activity of the University. *All prohibited conduct not covered by Title IX will be addressed through EOAA Discrimination & Harassment Procedures.*

- **Appendices**: This section includes resources related to the policies and procedures.

All University employees are expected to read, understand, and adhere to these Policies. The University provides mandatory and recommended online and in-person training programs and briefings for faculty and staff concerning EOAA Policies & Procedures. All University employees are expected to participate in required programs and to be knowledgeable about the University's EOAA Policies & Procedures.

Requests for workshops and briefings as well as any questions about EOAA Policies & Procedures should be addressed to EOAA.

The University provides a variety of resources for individuals who believe they have experienced prohibited conduct and all Parties involved EOAA investigative processes. Contact information for these campus resources and other community providers is provided in Appendix C.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# EOAA DISCRIMINATION & HARASSMENT POLICIES

## Prohibited Conduct

EOAA Policies & Procedures govern the conduct of University employees[1] and third parties[2] that:
- occurs on any University campus or in connection with University sponsored programs or activities (including business travel); or
- creates, contributes to, or constitutes a hostile work, educational, or living environment for University employees or students.

⇒ Columbia University prohibits **discrimination and harassment, including sexual harassment,** on the basis of age, alienage or citizenship status; arrest or conviction record; caregiver status; caste; color; credit history; creed; disability; familial status; gender (sex); gender identity; genetic predisposition or carrier status; lactation accommodation; marital status; national origin; pregnancy; race; religion; salary history; sexual or reproductive health decisions; sexual orientation; status as a victim of domestic violence, stalking, or sex offenses; unemployment status; veteran or active military status; or any other protected characteristic as established by law. These characteristics are referred to collectively as a "protected class" or "protected classes."

Columbia University recruits, employs, retains, promotes, and provides benefits to employees and admits and provides services to students without regard to protected class status. The University also provides reasonable accommodations to individuals with disabilities, individuals observing religious practices, employees who have pregnancy or childbirth-related conditions, or employees who are victims of domestic violence, stalking, and/or sex offenses.

⇒ The University prohibits **gender-based misconduct** including sexual harassment, sexual assault, domestic violence, dating violence, stalking, and sexual exploitation.

⇒ Columbia prohibits **retaliation** against individuals because they made a report to EOAA or participated in any manner in the review of an incident report or an investigation or proceeding under EOAA Policies & Procedures. This includes retaliation against Complainants, Respondents, and any others participating in the review of a report or an investigation or proceeding.
- A Complainant is the person making an allegation of misconduct.
- A Respondent is the person alleged to have committed the misconduct.

---

[1] Respondents who are Columbia students, students or employees of Barnard College or Teachers College, or employees of New York Presbyterian Hospital are governed by the policies and procedures identified in the chart in Appendix A.

[2] A third party is a person who is not a Columbia University faculty member, staff member, or student, but is a person to whom EOAA Policies apply or who may bring a complaint under the applicable procedures.



- Complainants and Respondents are sometimes referred to as "Parties." A "Party" is someone who is directly involved in an EOAA or Title IX proceeding. Others, such as witnesses and advisors, are not considered Parties but may not be retaliated against for participating in the review of a report or an investigation or proceeding under EOAA Policies & Procedures.

Prohibited Conduct will be considered and addressed under **EOAA Discrimination & Harassment Procedures**, as appropriate.[3] Where prohibited conduct meets the narrow definitional and jurisdictional requirements of Title IX it will be considered and addressed under the **Interim Title IX Grievance Process**.

**Related Policy Provisions:**
⇒The University prohibits knowingly making false statements or knowingly submitting false information during any EOAA Discrimination & Harassment Procedures or the Interim Title IX Grievance Process.

⇒Failure to comply with Interim Measures, defined below, is a violation of University Policy and may lead to disciplinary action.

⇒ Intentionally interfering with an EOAA complaint review or investigative process is prohibited. Interference may include:

- Any attempt to alter, prevent, or interfere with a party's or witness's participation in the EOAA process;
- Obstruction of any investigative interview, including witness tampering, which is attempting to alter, prevent, or interfere with a witness's statement or testimony;
- Intentional improper disclosure of any documents or materials related to any EOAA process;
- Intentionally withholding relevant information for purposes of obstructing, interfering, or delaying an EOAA process (this does not include privileged materials);
- Intentionally failing to comply with EOAA Policies & Procedures.

A finding of intentional interference may result in disciplinary action, an adverse inference, and/or sanctions as appropriate.

---

[3] University policies or contracts may allow certain faculty members and other employees to exercise grievance or appeal procedures in addition to the processes set forth in these Procedures. Where a person covered by such a policy or contract has allegedly engaged in conduct prohibited by EOAA Policies & Procedures, the investigation and disciplinary process will proceed in accordance with these Procedures. Once all processes set forth in these Procedures have been completed (including any appeals), the affected faculty member or other employee may then, to the extent permissible under applicable law, exercise such additional grievance or appeal procedures.


COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# Prohibited Conduct Defined

## ➔Discrimination & Harassment

Treating members of a protected class less favorably because of their membership in that class or having a neutral policy or practice that adversely impacts the members of one protected class more than others constitutes discrimination.

Subjecting an individual to unwelcome conduct, whether verbal or physical, that creates an intimidating, hostile, or abusive working, learning or campus living environment; that alters the conditions of employment or education; or unreasonably interferes with an individual's work or academic performance on the basis of the individual's membership in a protected class is harassment which is a form of discrimination.

Harassment may include, but is not limited to: verbal abuse; epithets or slurs; negative stereotyping; threatening, intimidating or hostile acts; denigrating jokes; insulting or obscene comments or gestures; and the display or circulation of written or graphic material (including in hard copy, by email or text, or through social media) that denigrates or shows hostility or aversion toward an individual or group members of a protected class. Calls, texts, emails, and social media usage by employees can contribute to a hostile work, learning, or living environment, even if they occur away from the workplace premises or not during work hours. Sexual harassment and other gender-based harassment, described further below, are forms of discrimination.

The University will determine whether the conduct was discriminatory based on both subjective and objective factors, based on the totality of the circumstances surrounding an alleged incident or course of conduct, including, the frequency, nature, and severity of the conduct, and whether a reasonable person would find the conduct discriminatory.

## ➔Sexual Harassment (*see also*, Title IX Sexual Harassment)

Sexual harassment is a form of sex discrimination. Unwelcome sexual advances, requests for sexual favors, requests for sexual contact, sexual comments, physical or visual conduct of a sexual nature, and sharing or displaying sexual images constitute sexual harassment. This includes when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, academic, co-curricular, or campus life activities; or
- Submission to or rejection of such conduct by an individual is used as the basis for academic, student life, or employment decisions affecting that individual; or
- Such unwelcome conduct is intentional or serves no legitimate purpose; or
- It involves unwelcome contact with parts of another individual's body which may cause that person to feel degraded or abused; or
- The unwelcome behavior is for the purpose of gratifying the actor's sexual desire; or


COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

- The unwelcome conduct constitutes more than "petty slights or trivial inconveniences"; or
- Such unwelcome conduct has the purpose or effect of unreasonably interfering with another person's academic or work performance or creating an intimidating, hostile, demeaning, or offensive working, learning, campus, or living environment.

The following describes acts that may be unlawful sexual harassment and are strictly prohibited:

- Unwelcome touching, pinching, patting, grabbing, brushing against another's body;
- Subtle or obvious pressure for unwelcome sexual activities;
- Unwelcome requests for sexual favors accompanied by implied or overt threats concerning performance evaluations, promotion, etc.;
- Unwelcome images, texts, social media posts, or other images or materials that are sexually demeaning or pornographic (this does not include images shown solely for the purposes of academic instruction or research); or
- Unwelcome sexually oriented gestures, noises, remarks, jokes or comments about a person's sexuality or sexual experience, which create a hostile environment.

*Sexual harassment that meets the narrow definitional and jurisdictional requirements of "Title IX Sexual Harassment" will be addressed under the Interim Title IX Grievance Process.*

➔ **Title IX Sexual Harassment (*see also*, Sexual Harassment)**

Title IX Sexual Harassment means conduct on the basis of sex that occurs in a University education program or activity within the United States (including computer and internet networks, digital platforms, and computer hardware or software owned or operated by, or used in the operations of, the University); or within a University-owned building in the U.S.; or a building privately owned by an officially recognized student organization (e.g., a fraternity-owned building) in the U.S.; and that meets one or more of the following definitions:

1. An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct (*quid pro quo* sexual harassment);
2. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity (hostile environment sexual harassment);
3. Sexual assault (as defined in the Clery Act) (*See* Title IX Gender-Based Misconduct, below);
4. Dating violence (as defined in the Violence Against Women Act (VAWA) amendments to the Clery Act) (*See* Title IX Gender-Based Misconduct, below);
5. Domestic violence (as defined in the VAWA amendments to the Clery Act) (*See* Title IX Gender-Based Misconduct, below);
6. Stalking (as defined in the VAWA amendments to the Clery Act) (*See* Title IX Gender-Based Misconduct, below).



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Only paragraph (2) is required to meet the elements of severity, pervasiveness, and objective offensiveness.

*Unwelcome sexual conduct that does not meet the definitional or jurisdictional requirements of "Title IX Sexual Harassment" (e.g., the conduct is not pervasive or it occurred outside of the United States) will be considered under the definition of "Sexual Harassment" and addressed under* Columbia's Complaint Investigation, Adjudication, and Appeals Procedures*, as appropriate.*

## ➔ Retaliation (*see also*, Title IX Retaliation)

Retaliation is any adverse action or threatened action, taken or made, personally or through a third party, against an individual (or group of individuals) because of their participation in any manner in the submission or review of an EOAA report, an investigation, or proceeding under EOAA Policies & Procedures, including individuals who file a third-person report and those who are interviewed or who otherwise provide evidence in the investigation (witnesses).

- Any individual or group of individuals, not just a Respondent or Complainant, can be found to have engaged in retaliation.
- Retaliation includes threatening, intimidating, harassing, or any other conduct that would discourage a reasonable person from engaging in activity protected under EOAA Policies & Procedures, such as seeking services; receiving protective measures and accommodations; reporting misconduct; or participating in an investigation or adjudication.
- Retaliation includes maliciously and purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during or after the investigation and resolution of a report of misconduct under EOAA Policies & Procedures.
- Retaliation may be found where a report is made in bad faith and the underlying charge does not constitute discrimination or harassment in violation of University policies.
- Retaliation does not include reports made or information provided in good faith, even if the facts alleged in the report are determined not to be accurate.

## ➔ Title IX Retaliation (*see also,* Retaliation)

Neither the University nor any person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in any investigation proceeding, or hearing under these Policies.

Intimidation, threats, coercion, or discrimination, including charges against an individual for policy



> violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

## ➔ Gender-Based Misconduct (*see also, Title IX Gender-Based Misconduct*)

Gender-based misconduct is a broad term that encompasses gender-based harassment, sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence.

### *Dating Violence*

The use of physical violence, coercion, threats, intimidation, isolation, stalking, or other forms of serious emotional, psychological, sexual, technological, or economic abuse directed toward a person who is or has been in a social relationship of a romantic or sexually intimate nature with the victim. Dating violence can be a single act or a pattern of behavior in relationships.

### *Domestic Violence*

The use of physical violence, coercion, threats, intimidation, isolation, stalking, or other forms of emotional, psychological, sexual, technological, or economic abuse directed toward

(a) a current or former spouse or intimate partner;

(b) a person with whom one shares a child; or

(c) anyone who is protected from the Respondent's acts under the domestic or family violence laws of New York.

Domestic violence can be a single act or a pattern of behavior in relationships.

### *Sexual Assault: Contact*

Any intentional sexual touching without a person's affirmative consent. Sexual touching includes contact under or over clothing with the breasts, buttocks, genitals, groin or inner thigh, or touching another with any of these body parts; making another person touch any of these body parts under or over clothing; or the emission of ejaculate on the clothing or body of another person without that person's consent.

### *Sexual Assault: Penetration*

Any form of vaginal, anal, or oral penetration, however slight, by a penis, object, tongue, or finger without a person's affirmative consent. This includes both attempted and completed sexual assault.



### *Sexual Exploitation*

Non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other illicit purpose. Examples of sexual exploitation may include, but are not limited to: observing another individual's nudity or sexual activity or allowing another to observe nudity or sexual activity without the knowledge and affirmative consent of all participants; non-consensual streaming of images, photography, video, or audio recording of sexual activity or nudity, or distribution of such without the knowledge and affirmative consent of all participants; exposing one's genitals in non-consensual circumstances; and inducing incapacitation for the purpose of making another person vulnerable to non-consensual sexual activity. Under certain circumstances sexual exploitation could constitute sexual harassment under Title IX.

### *Stalking*

A course of unwanted attention that is repeated or obsessive, directed toward an individual or a group[4] and that is reasonably likely to cause alarm, fear or substantial emotional distress. Stalking may take many forms, including lying in wait for, monitoring, or pursuing contact. Stalking may occur in person or through communications such as telephone calls, text messages, unwanted gifts, letters, e-mails, surveillance, or other types of observation.

---

### ➔ Title IX Gender-Based Misconduct (*see also, Gender-Based Misconduct*)

Title IX Gender-Based Misconduct means conduct on the basis of sex that occurs in a University education program or activity within the United States (including computer and internet networks, digital platforms, and computer hardware or software owned or operated by, or used in the operations of, the University); or within a University-owned building in the U.S.; or a building privately owned by an officially recognized student organization (e.g., a fraternity-owned building) in the U.S.; and meets one or more of the following definitions:

#### *Dating Violence*

Under Title IX, the term "dating violence" means violence committed by a person (A) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (B) where the existence of such a relationship shall be determined based on a consideration of the following factors: (i) the length of the relationship; (ii) the type of relationship; (iii) the frequency of interaction between the persons involved in the relationship.

#### *Domestic Violence*

Under Title IX, the term "domestic violence" includes felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a

---

[4] In cases where stalking is unrelated to membership in a protected category, the matter will be referred to Public Safety and/or Human Resources.



person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabited with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of New York, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of New York.

### *Title IX Sexual Assault*

Under Title IX, the term sexual assault means an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the FBI.

**Sex Offenses**: Any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent.

**Rape (except Statutory Rape):** 1) The carnal knowledge of a person (i.e., penile-vaginal penetration), without the consent of that person, including instances where the person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity; 2) Oral or anal sexual intercourse with another person, without the consent of that person, including instances where they are incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity; 3) To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of that person, including instances where that person is incapable of giving consent because of their age or because of their temporary or permanent mental or physical incapacity. An "object" or "instrument" is anything used by the offender other than the offender's penis.

**Fondling:** The touching of the private body parts of another person for the purpose of sexual gratification, without the consent of that person, including instances where the person is incapable of giving consent because of their age or their temporary or permanent mental or physical incapacity (for purposes of this definition, "private body parts" includes breasts, buttocks, or genitals, whether clothed or unclothed).

**Incest:** Non-forcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

**Statutory Rape:** Non-forcible sexual intercourse with a person who is under the statutory age of consent.

### *Title IX Stalking*

Under Title IX, the term stalking means engaging in a course of conduct directed at a specific person that would cause a reasonable person to (A) fear for their safety or the safety of others; or (B) suffer substantial emotional distress.

For purposes of this definition:

- Course of conduct means two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device,



> or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.
> - Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.
> - Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

### *Additional Guidance for Understanding Gender-Based Misconduct & Title IX Gender-Based Misconduct*

**Affirmative consent** is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity.

- Consent can be given by words or actions, as long as those words or actions create clear permission to engage in the sexual contact or activity. It is important not to make assumptions. If there is confusion or ambiguity, participants in sexual activity need to stop and verbally clarify each person's willingness to continue.
- Consent cannot be obtained by the use of physical force, compulsion, threats, intimidating behavior, coercion, or from a person who is incapacitated.
- Consent to one form of sexual activity does not imply consent to other forms of sexual activity.
- Consent to engage in sexual activity with one person does not imply consent to engage in sexual activity with another person.
- Silence or the lack of resistance, in and of itself, does not demonstrate consent. Again, it is important not to make assumptions; if confusion or ambiguity arises during a sexual interaction, it is essential that each participant stops and verbally clarifies the other's willingness to continue engaging in the sexual contact or activity.
- Consent may be initially given, but can be withdrawn at any time. When consent is withdrawn or can no longer be given, sexual activity must stop.
- Previous relationships or previous consent for sexual activity is not consent to sexual activity on a different occasion.
- The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, gender expression or relationship status.

**Coercion** is verbal and/or physical conduct, including intimidation and explicit or implied threats of physical, emotional, or other harm, that would reasonably place an individual in fear of immediate or future harm and that is used to compel someone to engage in sexual conduct against their will.

- Coercion is more than an effort to persuade, entice or attract another person to engage in sexual conduct. When a person makes clear that they do not want to participate in a



particular form of sexual conduct, that they want to stop or that they do not want to go beyond a certain type of sexual conduct, continued pressure can be coercive if it would reasonably place an individual in fear of immediate or future harm.

- In evaluating whether coercion was used, the frequency, duration and intensity of the other person's verbal or physical conduct or threats are all relevant, as is the degree of confinement or isolation to which the person was subjected. Coercion may be evidenced by an interaction that can reasonably be interpreted as indicating that a Party will be harmed or restrained if they do not engage in sexual conduct.

**Intimidation** is any threat of violence or other threatening behavior directed toward another person or group that reasonably leads the target(s) to fear for their physical well-being or to engage in sexual conduct for self-protection. A person's size alone does not constitute intimidation; however, a person can use their size or physical power in a manner that constitutes intimidation (for example, by blocking access to an exit).

**Force** refers to the use or threat of physical violence to compel someone to engage in sexual activity. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking, strangulation and/or brandishing or using any weapon.

**Incapacitation** is when an individual lacks the ability to knowingly choose to participate in sexual conduct. A person who is incapacitated cannot make a rational, reasonable decision because they lack the ability to understand their decision.

- Incapacitation may be associated with a person lacking consciousness; being asleep; being involuntarily restrained; or having a disability that impedes consent. Under New York State law, a person under the age of 17 lacks the capacity to give consent.
- Whether sexual conduct with an incapacitated person constitutes gender-based misconduct depends on whether the Respondent knew or should have known of the Complainant's incapacitation, based on objectively and reasonably apparent indications when viewed from the perspective of a sober, reasonable person in the Respondent's position.
- Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent.

**Alcohol & Consent**:

- The use of alcohol or other drugs is never an excuse for committing gender-based misconduct and never diminishes anyone's responsibility to obtain informed and freely given consent.
- The use of alcohol or other drugs never makes someone at fault for experiencing gender-based misconduct.



- The impact of alcohol and other drugs varies from person to person and there is no specific amount of alcohol or drugs consumed that leads to incapacitation.

In evaluating whether a person is incapacitated due to the consumption of alcohol, drugs or intoxicants, the following factors will be considered:

- Whether the Complainant understood the "who, what, when, where, why or how" of the sexual conduct; and
- How the Complainant was physically affected by the consumption of alcohol or drugs, which may include, but is not limited to, warning signs such as having slurred or incomprehensible speech, vomiting, unsteady gait, imbalance, bloodshot eyes, combativeness, emotional volatility, or notable change in personality.

Because the impact of alcohol and other drugs varies from person to person, the amount of alcohol and/or drugs a person consumes will not ordinarily be sufficient, without other evidence, to prove that they were incapacitated under EOAA Policies & Procedures.

Another effect of alcohol consumption can be memory impairment, or forgetting entire or partial events (sometimes referred to as a "black-out" or "brown-out"). A person may experience this symptom while appearing to be functioning "normally," including communicating through actions or words that seem to express an interest in engaging in sexual conduct. Whether sexual conduct with a person who is "blacked-out" constitutes gender-based misconduct depends on the presence or absence of observable factors that would indicate to a reasonable, sober person that a person is incapacitated, as described above. Total or partial loss of memory, without more, is insufficient to demonstrate incapacitation.

The use of alcohol or drugs can create an atmosphere of confusion and can lower inhibitions. All Parties should be aware of, and carefully consider, the potential consequences of the use of alcohol or drugs, and of the potential consequences of engaging in sexual activity when either Party or both Parties have used alcohol or drugs. Every individual is responsible for ensuring there is mutual, affirmative consent prior to engaging in sexual conduct regardless of whether their judgment may be impaired by the use of alcohol or drugs.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# Columbia's Duty to Report & Duty to Act Policies

## ➔Duty to Report

The University requires Columbia employees to report to EOAA any instance or allegation of prohibited conduct involving **any undergraduate or any graduate student** that is disclosed to, observed by, or otherwise known to that employee whether or not the student is a potential Complainant or Respondent and whether or not the student has any formal connection to the employee. Employees are required to report all information known to and/or learned by them regarding the alleged prohibited conduct, including, but not limited to:

- Names of all individuals involved, which includes the potential Complainant(s), Respondent(s), and anyone else who may possess relevant information to the alleged prohibited conduct;
- The nature and circumstances surrounding the alleged prohibited conduct;
- When and where the alleged prohibited conduct occurred;
- Any other information related to the alleged prohibited conduct.

All employees, including faculty, officers of administration, research officers, officers of the libraries, coaching staff and other staff who work directly with students (e.g. teaching assistants, advising staff, and residential program staff) have an obligation to immediately report harassment, discrimination, and gender-based misconduct involving undergraduate and graduate students to EOAA or as outlined in Appendix A.

This requirement to report is in place to help ensure that students are provided appropriate resources and to allow the University to mitigate harm to our community. Failure to report is a violation of University Policy.

The University asks all employees to report any prohibited conduct involving employees or third parties to EOAA and/or the employee's designated human resources representative.
There are certain confidential resources at Columbia. University employees working in a confidential capacity will not report information shared with them, unless requested by the victim. *See* Appendix C below for information about confidential resources at the University.

Reporters may request that the University not disclose their identity (*See also*, "What Happens When You Make a Complaint?" for more information regarding confidentiality and privacy). As explained below, the University strives to preserve the privacy of information shared leading up to and during an investigation where maintaining such privacy does not conflict with its obligations to conduct a prompt and thorough investigation.

*Only confidential employees can guarantee confidentiality, and no other employee should promise it.*



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

## ➔Protection of Minors

All University employees who interact with, supervise, chaperone, or otherwise oversee minors in programs or activities at the University, sponsored by the University, or in which the University participates are required to report immediately they have reasonable cause to suspect abuse or maltreatment of individuals under the age of 18. Any member of the Columbia University community may report a concern if they suspect that a child has been abused or maltreated.

Reporting requirements are contained in the Protection of Minors Policy found here: https://universitypolicies.columbia.edu/content/protection-and-treatment-minors-columbia-university.
.

## ➔Managers and Supervisors Duty to Report & Act

Managers and supervisory personnel are required to report to EOAA any instance or allegation of prohibited conduct involving **any employee** that is disclosed to, observed by, or otherwise known to that employee, whether or not the employee is a potential Complainant or Respondent and whether or not the employee has any formal connection to the manager or supervisor. Managers and supervisory personnel are required to report all information known to and/or learned by them regarding the alleged prohibited conduct, including, but not limited to:

- Names of all individuals involved, which includes the potential Complainant(s), Respondent(s), and anyone else who may possess relevant information to the alleged prohibited conduct;
- The nature and circumstances surrounding the alleged prohibited conduct;
- When and where the alleged prohibited conduct occurred;
- Any other information related to the alleged prohibited conduct.

In addition, managers and supervisory personnel are required to take reasonable and necessary action to prevent discrimination and harassment, to take appropriate action when they learn directly or indirectly of any conduct that might violate University policies, and to respond promptly and thoroughly to any such claims whether they occur within or outside of their area.

A manager or supervisor who fails to take appropriate action may be found to have violated Columbia's policies.

For purposes of EOAA Policies & Procedures, management and supervisory personnel include:

- Any employee having formal supervisory responsibility over employees;
- Faculty in such roles as department chair, dean, academic vice president, institute director, center director, or similar position supervising other faculty and/or staff; and



- Principal Investigators on a grant or contract who act in a supervisory capacity over the individuals in the lab or research they lead.

In evaluating whether an individual is a manager or supervisor for the purposes of EOAA Policies & Procedures, EOAA may consider whether an individual participates in hiring, supervising, evaluating, promoting, setting salary or wages, and/or terminating the employment of any other University employee.

## Columbia's Romantic & Sexual Relationship Policies

Columbia's romantic and sexual relationship policies outline certain prohibited relationships. When a relationship involves people who differ in power within the University community, it is of special concern because of the potential for conflicts of interest, abuse of power, or harassment. Such relationships may undermine the University's sense of community, mutual trust, and support.

### ➜ Prohibited Romantic & Sexual Relationships:

→ Faculty and staff may not engage in sexual or romantic relationships with undergraduate students.
→ Graduate students who teach, advise, or supervise undergraduate students may not have sexual or romantic relationships with any undergraduate students for any period of time that they have that role.
→ Faculty cannot be in a sexual or romantic relationship with a graduate student who is in any school, department, or program where the faculty member is connected, or with whom they engage in any direct or indirect way, or with any graduate student with whom they were previously connected.
→ Staff may not hire, supervise, employ, evaluate, advise, or mentor any Columbia student with whom they have - or have had - a romantic or sexual relationship.
→ Staff may not hire, supervise, employ, evaluate, or make decisions about salary for another staff member with whom they have or have had a romantic or sexual relationship.

The full text of the Romantic & Sexual Relationships policies can be found here:
https://eoaa.columbia.edu/content/romantic-and-sexual-relationships



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

## Accommodation Policies

### ➜Disability Accommodations

Columbia University is committed to fostering a campus that is accessible to people with disabilities. It conducts an on-going program to remove physical barriers and each year, it makes significant accessibility improvements. For questions or concerns regarding physical access, please send an email to: disability@columbia.edu.

Consistent with all applicable provisions of the Americans with Disabilities Act ("ADA") and state and local disability laws, the University will provide reasonable accommodations to qualified individuals with a disability provided that the University knew or should have known of their disability, and that such accommodation does not constitute an undue hardship on the University. A reasonable accommodation is assistance or changes to a position or workplace that will enable an employee to do their job.

The University encourages individuals with disabilities to come forward and request a reasonable accommodation as needed. Employees with a disability who believe they need a reasonable accommodation to perform the essential functions of their job should contact the Leave Management office:
Website: https://humanresources.columbia.edu/content/request-workplace-accommodations
Phone: (212) 851-0698
Email: leavemanagement@columbia.edu
Employees will not be retaliated against for requesting an accommodation.

### ➜Pregnancy Accommodations

The University will provide reasonable accommodations based on the needs of pregnancy, childbirth, or related medical conditions, provided that such accommodation does not constitute an undue hardship on the University. Employees needing an accommodation based on pregnancy, childbirth, or related medical conditions should contact the Leave Management office (https://humanresources.columbia.edu/content/request-workplace-accommodations). Employees will not be retaliated against for requesting an accommodation.

### ➜Religious Accommodations

Columbia University respects the religious beliefs and practices of all employees and will make an accommodation for such observances on request when a reasonable accommodation is available that does not create an undue hardship on the University.
Employees needing a religious accommodation should contact Human Resources (https://hr.columbia.edu).



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Employees will not be retaliated against for requesting an accommodation.



# EOAA DISCRIMINATION & HARASSMENT PROCEDURES
## *Complaint, Resolution, Investigation, Adjudication, & Appeal*

If you have experienced, witnessed, or become aware of conduct that may violate any provisions of the EOAA Policies & Procedures the University encourages you to report those allegations promptly.[5]

*If a report involves allegations of **Title IX Sexual Harassment or Title IX Gender-Based Misconduct**, you must instead follow the procedures in the **Interim Title IX Grievance Process** below in the shaded text box.*

Please consult with EOAA or the Title IX Coordinator[6] to determine whether alleged misconduct may constitute Sexual Harassment or Title IX Sexual Harassment and to evaluate which procedures apply. It is not the responsibility of the reporter or Parties to determine which procedures apply.

Although the University does not limit the time for submitting a report, prompt reporting increases the University's ability to investigate and respond effectively to complaints of misconduct.

## How to Report Prohibited Conduct

If you believe you have been subjected to, witnessed, or have otherwise learned of conduct prohibited by EOAA's Policies & Procedures, you can notify the University in any of the following ways:

➔ Via online report
➔ By e-mail at eoaa@columbia.edu
➔ By phone at (212) 854-5511
➔ By mail at 103 Low Library, MC 4333, 535 West 116th Street New York, NY 10027; or
➔ By hand delivery to 103 Low Library.

If the particular circumstances make a discussion with, or a report to, EOAA inappropriate (for example, the complaint involves an EOAA employee), incidents may be reported to Human Resources, the Complainant's supervisor, or the Office of the General Counsel. The University takes allegations of discrimination, harassment, and gender-based misconduct very seriously, and will take appropriate action.

---

[5] There is a separate procedure that applies to faculty complaints of discrimination and/or retaliation with respect to the denial of tenure or the failure to reappoint in a non-tenured rank. Such complaints must be filed with the University Senate's Committee on Faculty Affairs, Academic Freedom, and Tenure. Proceedings are governed by the Committee's procedure, a description of which may be obtained from the Office of the University Senate in 406 Low Library or https://secretary.columbia.edu/files/secretary/university_charters_and_statutes/083-04326_universityStatues_JL_v2.pdf.

[6] The Title IX Coordinator for Columbia University is responsible for overseeing the University's compliance and response to Title IX reports and complaints, and identifying and addressing any patterns or systemic problems revealed by such reports and complaints. The Title IX Coordinator and EOAA also oversee the administration of the Title IX Grievance Process in a neutral and equitable manner. Columbia's Title IX Coordinator also participates in the investigation of complaints as needed. https://sexualrespect.columbia.edu/columbias-title-ix-coordinator

COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Except in matters falling under the Title IX Grievance Process (described below), union members may also file complaints with their collective bargaining unit unless prohibited by their collective bargaining agreement, or unless an inherent conflict of interest would interfere with a fair adjudication in the collective bargaining unit. Those proceedings will be governed by the procedures of the applicable collective bargaining agreement:
https://humanresources.columbia.edu/content/documents#/filter/categories/Collective%20Bargaining%20Agreements

***Where a Student Employee covered by the Columbia-UAW Agreement is a Party to a Complaint with a complaint relating to their employment, Parties may be entitled to additional procedures under the terms of the Agreement. Please review the*** [***Collective Bargaining Agreement between Columbia University in the City of New York and Student Workers of Columbia, UAW, and its Local Union, SWC-UAW Local 2710 for additional information***]***.***

If an individual files a complaint with more than one University department or office regarding the same incident, EOAA, in consultation with the other department(s), will determine the appropriate department to conduct the investigation. Complaints will not be investigated by more than one department or office simultaneously, nor will a department or office investigate a Complaint after another department or office has completed an investigation into that claim.

## ➔ Who Can Report Prohibited Conduct?

Any individual, whether they are affiliated with the University or not, may report alleged violations of EOAA Policies. The reporter may be the person who experienced the alleged misconduct, someone who was a witness to or otherwise learned of the alleged misconduct, or a mandatory reporter.

## ➔ What Should You Include in a Complaint to the University?

Complaints to the University should include all of the information the reporter knows about an incident or issue being reported. This may include:

- The name and role (e.g., employee, student, third party) of the Complainant and the Respondent;
- Details about the incident(s) or conduct that may have violated an EOAA Policies & Procedures;
- Date(s) and location(s) of the incident(s);
- The name and role of any witness(es) to the incident(s) and their e-mail addresses, telephone numbers, and street addresses if known.

Complaints may be submitted anonymously. However, anonymous reports can limit the University's ability to investigate and respond.



## ➔Student Amnesty for Alcohol and/or Drug Use

The health and safety of every student at Columbia is of utmost importance. Columbia recognizes that students who have been drinking and/or using drugs (whether use is voluntary or involuntary) at the time that violence, including but not limited to sexual assault, domestic violence, dating violence, or stalking occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Columbia strongly encourages students to report sexual assault, domestic violence, dating violence, sexual exploitation, or stalking to Columbia officials. Anyone acting in good faith who discloses any gender-based misconduct to Columbia's officials or law enforcement will not be subject to disciplinary action for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the sexual assault, domestic violence, dating violence, sexual exploitation, or stalking.

## What Happens When You Make a Complaint?

Making a Complaint to the University or meeting with someone from EOAA to talk about a situation or incident does not automatically launch a formal investigation. It is, however, an important first step in alerting the University to an issue or incident and getting assistance to resolve it.

**A Note About Confidentiality & Privacy:**

A Complainant and witness(es) may request that the University not disclose their identity to anyone else, including the alleged offender. However, the University cannot guarantee that their identity will not be disclosed. The University strives to preserve the privacy of information shared leading up to and during an investigation where maintaining such privacy does not conflict with its obligations to conduct a prompt and thorough investigation.

In cases of sexual assault, domestic violence, dating violence, and stalking, a Complainant also may request that EOAA not disclose their identity to anyone else, including the alleged offender. While such a request may limit the University's ability to investigate and respond to the reported misconduct, EOAA will consider the request in light of the University's commitment to provide a safe and non-discriminatory environment for all members of the University community and will honor such a request when appropriate.

In considering the request, EOAA will weigh the following factors:
- Circumstances that suggest there is an increased risk of the Respondent committing additional acts of sexual misconduct or other discriminatory or harassing acts, such as:
  - Whether there have been other complaints about the same Respondent;
  - Whether the Respondent threatened further misconduct against the Complainant or others; or
  - Whether the misconduct was committed by multiple perpetrators.



- Circumstances that suggest there is an increased risk of future acts of misconduct under similar circumstances, such as a pattern of perpetration, use of drugs or alcohol, a given location, or by a particular group;
- The misconduct alleged involved the use of a weapon;
- Age of the Complainant;
- Whether the University possesses other means to obtain relevant evidence, such as security cameras, witnesses or physical evidence.

EOAA will promptly notify a Complainant making such a request whether the University will be able to honor it.

Whether or not the University is able to grant a request to keep the Complainant's identity from the Respondent, University personnel will reveal information about investigations and disciplinary proceedings related to misconduct only to those who need to know in order to carry out their duties and responsibilities. In all cases, the University will take appropriate steps designed to counteract the effects of the alleged sexual misconduct, prevent its recurrence, and make accommodations for the Parties involved. This may include work, academic, and residential accommodations, increased monitoring, supervision, or security at locations or in connection with activities where the alleged misconduct occurred, and training and educational materials for the campus community. If there is reason for concern about possible retaliation or harm, the University will take protective measures in consultation with the affected Parties.

## ➔ Initial Complaint Review

EOAA regularly receives Complaints from or speaks with individuals who are concerned about an issue or incident that may have violated EOAA Policies. EOAA will promptly review a Complaint and attempt to gather any necessary additional information in order to determine next steps.

The purpose of the Initial Complaint Review is to determine:
- Whether EOAA has jurisdiction over the Complaint; and
- Whether, if substantiated, the allegations in the Complaint would violate EOAA Policies & Procedures.

EOAA will have jurisdiction if the alleged conduct:
- Occurred on any University campus or in connection with University sponsored programs or activities (including business travel); or
- Creates, contributes to, or constitutes a hostile work, educational, or living environment for University employees or students.

If EOAA concludes that it *does not* have jurisdiction, EOAA will refer the reporter or Complainant to other resources for potential additional action or assistance and administratively close the case.

If EOAA concludes that it *does* have jurisdiction, EOAA will assign the case to an investigator or investigative team for substantive review.



Where appropriate, EOAA will also provide the Complainant with information about supportive accommodations and interim measures, described below, and explain the resolution processes that are available.

The University may consolidate complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, where the allegations arise out of the same facts or circumstances. Where an investigation involves multiple Complainants, multiple Respondents, or both, the University may issue a single Investigative Report.

In some instances, the alleged conduct described in the Complaint may include both conduct that would constitute Title IX Sexual Harassment and conduct that would not constitute Title IX Sexual Harassment (whether sexual harassment, gender-based misconduct, or other discrimination or harassment prohibited by EOAA Policies & Procedures). The Investigative Team will determine whether the allegations outside of Title IX's narrow definition and jurisdictional requirements should be adjudicated together under the Title IX Grievance Process or addressed separately by the EOAA Discrimination & Harassment Procedures.

## ➔ Supportive Accommodations & Interim Measures

In certain circumstances, it may be appropriate to provide supportive accommodations or impose interim measures. EOAA will work with employees and other individuals affected by the alleged misconduct to ensure their safety and promote their well-being.

All Parties and witnesses involved with EOAA are expected to continue performing their job responsibilities during the course of an EOAA inquiry or investigation. Supportive accommodations and interim measures are intended to aid Parties in fulfilling their job responsibilities.

### *What is a Supportive Accommodation?*

Supportive accommodations are appropriate in certain circumstances and are intended to assist or protect an individual who has experienced alleged prohibited conduct so that they may continue to participate in their professional or academic responsibilities. Supportive accommodations are typically provided while a resolution, investigation, or a disciplinary action is pending.

Supportive accommodations may include a referral to the Employee Assistance Program (EAP), Sexual Violence Response & Rape Crisis/Anti-Violence Support Center (SVR), reassigning or removing a Respondent from an individual's workplace or supervision, or changing work schedules or transportation arrangements while a resolution, investigation, or a disciplinary action is pending. EOAA will evaluate the need for and appropriateness of supportive accommodations in light of the circumstances and information available at the time and review as needed.

### *What is an Interim Measure?*

The University may impose interim measures, based on all of the facts known at the time, to ensure the safety of the University community and all individuals involved, to prevent the escalation of a conflict, or to protect the integrity of the EOAA process.
Interim measures may include:



- No-contact directives;
- Restricting access to campus buildings or University property;
- Temporary separation from the University;
- Moving an on-campus residence;
- Suspension from activities.

In the event a Party believes that the interim measure(s) are insufficient, a Party may appeal directly to the Vice Provost for EOAA via the online Appeal Form available at eoaa.columbia.edu.

Failure to comply with interim measures is a violation of EOAA Polices & Procedures and may lead to disciplinary action.

## How Does EOAA Resolve Complaints?

EOAA provides Complainants with several different ways to resolve their Complaints. During an initial meeting with an investigator or investigative team, and again at the conclusion of the initial review process, options for resolutions will be discussed.

In many cases, Parties may choose to resolve a Complaint using a Complainant Initiated Resolution, Mediation or Facilitated Dialogue, or Administrative Resolution. These resolutions options are voluntary processes and do not involve disciplinary or punitive action. These options are available when:

- The Parties do not wish to proceed with an investigation;
- EOAA does not require an investigation and agrees that this is an appropriate resolution; and
- All Parties want EOAA's assistance to resolve allegations of misconduct without an investigation.

In many cases, these resolution options may resolve the situation. However, in some cases, it may be ineffective or place the Complainant in an uncomfortable, insecure, or compromised position. *Under no circumstances should an individual feel pressured to attempt any of these resolutions.* If these measures are unsuccessful, the individual may choose to pursue other methods of resolution.

At any point prior to a resolution of the Complaint, either Party may withdraw from a resolution process. Once the Parties have reached an agreement through one of these resolution methods, the University will not conduct an investigation based on the same allegations.

### ➔Complainant Initiated Resolution

In some situations, an individual may want to make EOAA aware of an incident of discrimination or harassment, but may choose to work with the alleged offender directly on their own. This may include:



- a face-to-face discussion;
- a personal telephone conversation;
- e-mail correspondence; or
- another form of communication.

Individuals who have experienced sexual assault, domestic violence, dating violence, or stalking are advised **not** to attempt to resolve the matter on their own.

## ➔ Mediation and Facilitated Dialogue

EOAA can serve as a neutral facilitator or mediator, or find an appropriate individual to serve as one, and facilitate or mediate a conversation between or among the Parties. Mediation and facilitated dialogue can involve either direct or indirect communication between the Parties, depending on preferences. Facilitated dialogue is usually focused on helping the Parties together resolve an issue and mediation typically deals with Parties in conflict with each other. At the conclusion of the mediation or facilitated dialogue, the third-Party neutral will memorialize the agreement that was reached between the Parties.

EOAA will review all requests for mediation or facilitated dialogue and determine whether it is an appropriate way to resolve the Complaint. EOAA may decline to mediate or facilitate based on the facts and circumstances of the particular case.

If the mediation or facilitated dialogue results in a successful resolution of the Complaint, no investigation will be conducted. EOAA will make no determination about whether or not there was a policy violation and the case will be closed. If the Parties are unable to reach a resolution, the Complainant may choose to proceed with a Request for a Formal Investigation, as described below.

Either Party has the right to terminate the process and explore another option for resolution at any time.

Statements made by Parties during a mediation or facilitated dialogue will not be used as evidence in any subsequent formal University investigation and adjudication process, but such statements could be disclosed in response to a subpoena in a subsequent civil or criminal proceeding.

*The University may, at its discretion, permit mediation or facilitated dialogue for cases that involve allegations of sexual assault and where both Parties voluntarily agree to the process in writing.*

## ➔ Administrative Resolution

An Administrative Resolution to a Complaint may take place when a Complainant does not wish to engage in other resolution processes or investigation, and EOAA does not require an investigation. This form of resolution can include no-contact directives, implementation of safety measures, referrals to counseling, and targeted education and training.



# ➔ Investigations

In cases where these resolution options are unavailable, unwanted, or have been unsuccessful, EOAA may conduct an investigation. An investigation includes interviews with Parties and witness(es) and the review of relevant documents or other materials. At the conclusion of an investigation, the University will decide, based on the preponderance of the evidence, whether it is more likely than not that the alleged misconduct violated EOAA Policies & Procedures.

A Complainant must make a Request for a Formal Investigation, as described below, for EOAA to start an investigation. Under certain circumstances, in the absence of a Request for a Formal Investigation, EOAA may initiate an investigation at its discretion.

### *What is a Request for a Formal Investigation?*

In order for EOAA to investigate a Complaint, the Complainant must submit a document, either electronically or by hard-copy, alleging discrimination, harassment, sexual harassment or gender-based misconduct (non-Title IX), or other policy violations against a Respondent or Respondents and requesting the University to investigate the allegations. This Request for a Formal Investigation must contain the individual's physical or digital signature, or other indication that the Complainant is the person submitting the Request for a Formal Investigation. The document should be submitted to EOAA electronically, by mail, or in person.

The Request for a Formal Investigation should include the following information:

- A statement requesting an investigation;
- A statement that briefly describes the nature of the alleged misconduct (e.g., racial discrimination, sexual harassment, discrimination on the basis of sexual orientation, etc.);
- Any additional details about the alleged conduct, witnesses, or other information not previously provided to EOAA; and
- An affirmation that the Complainant is the person submitting the request.

### *How are Requests for a Formal Investigation evaluated?*

EOAA will confirm that, if substantiated, the alleged misconduct would violate EOAA Policies & Procedures. EOAA will also evaluate whether there is a reasonable basis to engage in the investigative process. Reasonable basis means that there is some credible information available to support the alleged violation. Sources of credible information may include a credible witness, a Complainant's statement, or supporting documentation.

Based on those conclusions, EOAA may then:

- Initiate an investigation;
- Refer the request and Complaint to another office such as Human Resources or the Office of General Counsel to address the alleged conduct through alternate means; or
- Dismiss the Complaint if EOAA determines that the alleged misconduct, if substantiated, would not constitute a violation of EOAA Policies & Procedures, where there are no credible bases, or that the allegations are refuted by evidence or information known to or possessed by EOAA.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

The University may also dismiss a Complaint or allegations within a Complaint if:

- A Complainant notifies EOAA in writing that they would like to withdraw the Complaint or any of its allegations;
- The Respondent is no longer employed by the University;
- Particular circumstances prevent the University from gathering evidence in order to determine whether or not EOAA Policies & Procedures were violated.

## The EOAA Investigative Process

If the University initiates an investigation, it will follow the procedures described in this section. In investigations that require more than sixty (60) days to conclude, EOAA will update the Parties at sixty (60) days and every thirty (30) days thereafter with a status update that includes an estimate of the additional time required to complete the process. An investigation commences when the University provides written notice of allegations to the Parties. The notice date is day zero (0).

### ➔ Investigator Assignment

The University has designated the Vice Provost for EOAA to oversee investigations of alleged EOAA Policies & Procedures violations. The Vice Provost for EOAA or their designee will assign an investigator or team of investigators to an investigation. The investigator(s) assigned to a matter will tailor an investigation based on the facts, nature, and complexity of the allegations and surrounding circumstances.

All investigators will have extensive training in investigating and evaluating conduct prohibited under EOAA Policies & Procedures. The investigator(s) will be impartial and unbiased and treat Complainants and Respondents equitably. The University may, in its sole discretion, assign appropriate internal non-EOAA investigator(s) or outside investigator(s) to a matter.

Should a Party perceive a potential or actual conflict of interest or bias related to the investigator(s), the Party is expected to promptly raise such conflict in writing to the Vice Provost for EOAA.

### ➔ Notice of Allegations

The University will provide written notice of allegations to the Parties identified in the Complaint and/or the Request for a Formal Investigation. Notices will be sent simultaneously and in writing, and will be delivered through email.

The University uses Columbia email via Maxient as the official means of communication with all Parties and by other reasonable means if they are neither an employee nor a student. Parties are expected to check their University email often as they are responsible for all official communication sent to their Columbia email address.

The Notice will include sufficient details known to the University and will provide at least five (5) business days to prepare a response before any initial interview. Sufficient details include:



- The identities of the Parties involved in the incident, if known;
- A description of the misconduct alleged; and
- The date(s) and location(s) of the alleged incident, if known.

The Notice will also include:

- A written explanation of the Parties' rights and resources available.
- Information about the timing of the investigative process. This will include reasonably prompt timeframes for the investigative process and a process that allows for temporary delays of the investigation or the limited extension of timeframes for good cause with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action.
- A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding a violation of EOAA Policies & Procedures is made at the conclusion of the investigative process.
- A reminder that the University prohibits knowingly making false statements or knowingly submitting false information during the investigation.

If, in the course of the investigation, EOAA decides to investigate allegations about the Complainant or Respondent that were not included in the Notice of Allegations provided, the University will provide an updated Notice of Allegations to all known Parties.

### ➜Fact Gathering Stage

Investigators, acting on behalf of the Vice Provost for EOAA, have the authority and responsibility to gather information from all sources judged necessary for fair resolution of a Complaint. The investigator(s) will therefore attempt to gather relevant information by interviewing the Complainant, the Respondent, and any other person(s) with relevant information about the alleged incident(s). The investigator may also review personnel records, documents, and other materials that may be relevant to the investigation. Parties may suggest questions to ask of witnesses or the other Party during any stage of the investigative process.

The Complainant, the Respondent, advisors, and witnesses may not record any meeting or interview conducted as part of the investigative process, nor copy, photograph, nor improperly distribute any documents or evidence to which they are able to access as part of the investigative process.



### *Relevant Information*

The investigator(s) will objectively evaluate all relevant evidence gathered through the course of the investigation. The investigator(s) will speak to each Party in detail about the allegation(s) and ask each Party to identify potential witnesses and/or other evidence to be considered. The Parties will have equal opportunity to present fact witnesses and other evidence through the course of the investigative process. However, only relevant information will be considered by the investigator, and the investigator retains sole discretion in determining whether the witness(es) testimony and/or other evidence are relevant to the allegation(s). Witnesses and information are relevant to an investigation if they help to show that an allegation is more or less likely to be true.

### *Submitting Evidence*

The Parties are expected to submit evidence and respond to the investigator's requests for information in a timely fashion. Any documents submitted to the investigator for consideration may be referenced in the Investigative Report, discussed below, and shared with the opposing Party and advisor, if applicable. The University may impose restrictions or require a non-disclosure agreement to prevent the dissemination of the evidence.

To streamline the investigative process and ensure a fair review of the evidence, Parties and witnesses are expected to submit evidence to the investigator in an electronic format, and in accordance with any additional instructions provided by the investigator. However, the investigator will work with Parties and witnesses to receive evidence in another manner when electronic submission is not possible.

## ➔ Advisors

Complainants and Respondents may be accompanied by one advisor of their choice. The advisor may be an attorney-advisor or other advisor and may accompany the Party to any meeting related to the investigation. The advisor may not be an individual who may have a conflicting role within the investigation or sanction process. This includes, but is not limited to, supervisors making decisions on sanctions, human resources, faculty affairs, or other personnel who may provide information or be consulted on sanctioning decisions and witnesses. An advisor may provide support and advice about the investigation to their advisee. However, an advisor may not present on behalf of their advisee nor may they behave in a manner that is disruptive to the investigative process.

Any member of a collective bargaining unit recognized by the University, whether a Party, reporter, or witness, is entitled to have a union representative present during any investigatory meeting.

In any investigatory meetings,
An advisor **may**:
- Talk quietly with their advisee or pass notes in a non-disruptive manner.
- Take a break, at the advisee's request, to speak privately with the advisee.
- Review information provided to the advisee by the investigators.
- Assist the advisee with preparing written submissions to the investigative team in advance of any investigative meeting.

An advisor **may not**:



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

- Speak on behalf of the advisee.
- Pose questions to the investigators.
- Answer questions posed to the advisee.
- Make requests (outside of scheduling and accommodations).
- Provide information to the investigators.
- Be disruptive.

Communication with advisors by EOAA must be authorized in writing by a Complainant or Respondent. Such communication could include scheduling requests, requests for information and evidence, investigation status updates, the sharing of documents, and other investigation related matters. Absent the Party's written consent for EOAA to include their advisor on such communication, the Party will be responsible for informing the advisor on all matters. EOAA will not intentionally schedule meetings, interviews, or any other related proceedings where an advisor is not available, provided that the advisor acts reasonably in providing available dates and works collegially to find dates and times that meet all schedules.

➔ **Investigation Protocols**

In conducting the investigation and drafting the Investigative Report, the investigator(s) will follow the protocols set forth below:

### *Evaluating of Evidence*

Investigators will use the preponderance of the evidence standard for investigations and determinations regarding EOAA Policies & Procedures violations. This means that the investigator(s) will determines whether it is more likely than not that a violation of EOAA Policies & Procedures occurred.

### *Preserving Evidence*

The investigator(s) will direct the Complainant, Respondent, witnesses, and other interested individuals to preserve all relevant evidence, which may include phone logs, text messages, electronic communications or other evidence relating to the alleged misconduct.

### *Character Witnesses*

The investigator(s) will not interview witnesses whose sole purpose is to provide character information.

### *Expert Witnesses*

The investigator(s) will not interview or consider evidence from expert witnesses.

### *Romantic or Sexual History in Sexual Assault Cases*

Either the Complainant or the Respondent may provide information regarding their shared sexual history. Generally, investigators will not consider information concerning the Complainant's or the Respondent's sexual history with other people, except under very limited circumstances such as explaining an injury or responding to specific questions raised by an allegation.



If either Party offers any information about shared sexual history, the other Party will be notified and have the right to respond and request this information not be considered. Investigators will determine whether information should be included based on relevance to the investigation, applicable law, and fairness to both Parties.

### *Medical Information*

A Party's medical, psychological, or similar records cannot be accessed, considered, disclosed, or otherwise used as part of this investigative process without the Party's voluntary, written consent. Each Party has the right to request that evidence regarding their mental health diagnosis or treatment be excluded from consideration on the basis that it is not relevant to the allegations.

### *Legally Recognized Privilege*

Any information protected by a legally recognized privilege (e.g. attorney-client, nurse-patient, doctor-patient) will not be considered at any point during an investigation, unless the privilege is properly waived by the Party who holds the privilege.

## ➜Investigative Report

Investigators will prepare an Investigative Report at the conclusion of the investigation. The Investigative Report will include:

- A review of the facts and supporting evidence;
- An analysis of the facts as they relate to EOAA Policies & Procedures; and
- A determination as to whether, by a preponderance of the evidence, it is more likely than not that the alleged conduct violated EOAA Policies & Procedures.

The Complainant and the Respondent with their accompanying advisor, if any, may review the Investigative Report at the EOAA office or by video conference. The investigative report will also be made available to the Respondent's supervisor(s). The Parties may take notes of the Investigative Report, but may not take photos, screenshots, or copy it in whole or in part when reviewing it.

An Investigative Report will only be provided in connection with a labor arbitration where the parties have signed an agreement not to disseminate the report outside of the arbitration.

## ➜Determination Letter

Investigators will provide a written Determination Letter to the Complainant, the Respondent, and the Respondent's supervisor(s). The Determination Letter will briefly summarize the alleged conduct that was the subject of investigation, identify the EOAA Policies & Procedures definition(s) at issue, and inform the Parties of EOAA's finding(s) as to whether the alleged conduct violated EOAA Policies & Procedures. The written determination will also inform the Parties of the applicable timeline for appeal.

If the investigators find that the Respondent has engaged in prohibited conduct, the Determination Letter will be accompanied by a recommendation that the Respondent's supervisor(s) discipline the



Respondent, in consultation with EOAA and Human Resources, and identify recommended sanctions.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

## ➜ Sanctions

The designated supervisor(s) will be tasked with implementing appropriate discipline for the Respondent. Appropriate discipline is determined by the facts and circumstances of the case. The designated supervisor(s) should consult with EOAA in making that assessment. Factors that may be considered include instances of previous prohibited conduct, the seriousness of the violation, the totality of the information available, and any extenuating or aggravating information deemed relevant.

Discipline may include, but is not limited to: reprimand/warning, change of the Respondent's job duties, disciplinary probation, revocation of honors and awards, restricted access to University facilities or activities, a "no-contact" order, relocation of a Respondent's University-provided residence, relocation of Respondent's workplace/station, demotion, administrative leave with or without pay, suspension with or without pay, unpaid leave, and dismissal or restriction from University employment. The University may also require training or educational intervention.

# EOAA Appeal Process

If a Complainant or Respondent believes that the investigator's determination is incorrect, they may file an appeal.

There are five grounds for appeal:
(1) The Party has new information, unavailable at the time of the investigation that may change or affect the outcome; or
(2) There was a procedural error that may have impacted the outcome.
(3) An appeal based on a conflict of interest or exhibited bias of an investigator against Complainants or Respondents generally or an individual Complainant or Respondent that affected the outcome;
(4) There were relevant, disputed issues or questions concerning interpretation of University policy that impacted the outcome;
(5) The allegations were substantiated in whole or in part, but the proposed changes to Complainant's working conditions are insufficiently protective of Complainant or unnecessarily disruptive given the findings.

Disagreement with the finding is not, by itself, grounds for appeal.

The University reserves the right to investigate and take any necessary action based on new information or events that were not known during an investigation.

## ➜ Format and Timing of an Appeal

The appeal must be:
- In writing and is limited to five double-spaced, type-written pages; and
- Delivered to the Vice Provost for EOAA within 10 business days of delivery of the investigator's determination to the Parties (via email, mail or hand delivery).



Failure to meet the deadline for appeal will result in waiver of the right to appeal.

## ➜Designation of Appellate Officer

On receipt of an appeal where only employees are Parties, the Vice Provost for EOAA will designate a senior officer of the University to serve as an Appellate Officer in the matter and will forward the appeal to the Appellate Officer for review.

On receipt of an appeal where an undergraduate or graduate student is a Party, an Appellate Officer will be selected from a pool of individuals from outside the University with appropriate training and experience.

## ➜Notification of Non-Appealing Party

The Vice Provost for EOAA will notify the Party who is not appealing the determination that an appeal has been filed, the grounds for appeal, and the identity of the Appellate Officer.

The non-appealing Party will be given a copy of the appeal and permitted to submit a written response to the appeal. The response is limited to five double-spaced type-written pages and must be delivered to the Vice Provost for EOAA within 5 business days of receiving notice of the appeal.

## ➜Appeal Proceedings

The Appellate Officer may conduct appeal proceedings as they deem appropriate, and, at their discretion, may meet with the Parties but will not hear testimony of witnesses.

The Appellate Officer will render a written decision within 20 business days of the EOAA Vice Provost's receipt of the initial appeal, and the Appellate Officer will forward a recommendation for the Provost's approval. Upon approval by the Provost, the Vice Provost for EOAA will provide written notice to the Parties of the final disposition of the matter. Once approved by the Provost, the decision of the Appellate Officer is not subject to further review.

Any discipline imposed prior to the filing of the appeal will stand during the pendency of the appeal. Discipline may also be imposed while the appeal is pending.



## INTERIM TITLE IX GRIEVANCE PROCESS
### *Title IX Complaint, Title IX Investigation,*
### *Title IX Adjudication, & Title IX Appeal*[7]

If you have experienced, witnessed, or become aware of conduct that may violate Title IX of the Education Amendments Act of 1972 ("Title IX") the University encourages you to report those allegations promptly. Conduct that may violate Title IX includes sexual harassment, sexual assault, stalking, sexual exploitation, dating violence, and domestic violence as defined by Title IX and outlined above.

*If a report involves allegations of discrimination, harassment (including sexual harassment) or violations of other EOAA Policies that do not meet Title IX's narrow definition of sexual harassment or other gender-based misconduct or its jurisdictional requirements, you must instead follow the procedures in the EOAA Discrimination & Harassment Procedures above.*

Please consult with EOAA or the Title IX Coordinator[8] to determine whether the alleged misconduct meets Title IX's narrow scope and to evaluate which procedures apply. It is not the responsibility of the Parties to determine which procedures apply.

Although the University does not limit the time for submitting a report, prompt reporting increases the University's ability to investigate and respond effectively to reports of misconduct.

## How to Report Prohibited Title IX Conduct

If you believe you have been subjected to, witnessed, or have otherwise learned of sexual harassment or other gender-based misconduct prohibited by Title IX, you can notify the University in any of the following ways:

> ➔ Via online report; or

---

[7] The Interim Title IX Grievance Process is effective August 14, 2020 and will apply to any report made on or after that date. Unresolved but pending cases will be resolved under the procedures in place at the time the matter was reported.

Should any portion of the Title IX Final Rule, 85 Fed. Reg. 30026 be stayed or held invalid by a court of law through an applicable order, or should the Title IX Final Rule be withdrawn or modified to not require some or all of the elements of the Interim Title Grievance Process, the elements no longer required by the Final Rule will be deemed revoked as of the publication of the opinion, order, withdrawal, or modification, and all reports made after such a date, as well as any elements of the process that occur after that date if a case is not complete by that date, will be adjudicated under the EOAA Discrimination & Harassment Procedures.

[8] *See* above note 4.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

➔ **EOAA**
E-mail at eoaa@columbia.edu
Phone at (212) 854-5511
Mailing Address: 103 Low Library, MC 4333, 535 West 116th Street New York, NY 10027;
Hand delivery to 103 Low Library; or

➔ **Title IX Coordinator**
Email: titleix@columbia.edu
Phone: 212-843-1276
Mailing Address: Kent Hall, 201(A), 1150 Amsterdam Ave., New York, NY 10027

If the particular circumstances make a discussion with, or a report to, EOAA inappropriate (for example, the report involves an EOAA employee), incidents may be reported to the Title IX Coordinator, Human Resources, the Office of the General Counsel, or the Complainant's supervisor. The University takes allegations of Title IX sexual harassment and Title IX gender-based misconduct very seriously, and will take appropriate action.

Nothing in the Title IX Grievance Procedures or any other EOAA Policies and Procedures prevents a Complainant from seeking the assistance of state or local law enforcement in addition to or instead of any on-campus process.

## ➔Who Can Report Prohibited Title IX Conduct?

Any individual, whether they are affiliated with the University or not, may allege violations of Title IX. The reporter may be the person who experienced the alleged misconduct, someone who was a witness to or otherwise learned of the alleged misconduct, or a mandatory reporter.

## ➔What Should You Include in a Title IX Report to the University?

Title IX Reports to the University should include all of the information the reporter knows about an incident or issue being reported. This may include:

- The name and role (e.g., employee, student) of the Complainant and the Respondent;
- Details about the incident(s) or conduct that may have constituted conduct prohibited by Title IX;
- Date(s) and location(s) of the incident(s);
- The name and role of any witness(es) to the incident(s) and their telephone numbers, e-mail addresses, and street addresses if known.

Reports may be submitted anonymously, but anonymous reports can limit the University's ability to investigate and respond.



➜ **Student Amnesty for Alcohol and/or Drug Use**

The health and safety of every student at Columbia is of utmost importance. Columbia recognizes that students who have been drinking and/or using drugs (whether use is voluntary or involuntary) at the time that violence, including but not limited to sexual assault, domestic violence, dating violence, sexual exploitation, or stalking occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Columbia strongly encourages students to report sexual assault, domestic violence, dating violence, or stalking to Columbia officials. Anyone acting in good faith who discloses any assault to Columbia's officials or law enforcement will not be subject to disciplinary action for violations of alcohol or drug use policies occurring at or near the time of the commission of the sexual assault, domestic violence, dating violence, sexual exploitation, or stalking.

## What Happens When You Make a Title IX Report?

Making a Report to the University or meeting with someone from EOAA or the Title IX Coordinator to talk about a situation or incident does not automatically launch a formal investigation. It is, however, an important first step in alerting the University to an issue or incident and getting assistance to resolve it.

The University is obligated to act when it has actual knowledge of allegations of conduct prohibited by Title IX. Under Title IX, actual knowledge means that either the Title IX Coordinator or EOAA (sometimes referred to as "Officials with Authority") has been notified about the alleged misconduct. The University's response to allegations of Title IX Sexual Harassment are deliberately indifferent only if its response to Title IX Sexual Harassment is clearly unreasonable in light of the known circumstances.

**A Note About Confidentiality & Privacy:**

References made to confidentiality refer to the ability of identified confidential resources to not report crimes and policy violations to law enforcement or University officials without permission, except for extreme circumstances, such as a health or safety emergency or child abuse. References made to privacy refer to University offices and employees who cannot guarantee confidentiality but will maintain privacy to the greatest extent possible. Information disclosed to such offices and employees will be relayed only as necessary to investigate or seek a resolution and to notify EOAA, the Title IX Coordinator, or designee, who are responsible for tracking patterns and spotting systemic issues. The University will limit the disclosure to every extent possible, even if EOAA or the Title IX Coordinator determine that the request for confidentiality cannot be honored.



## ➔ Preliminary Measures Available Under Title IX

EOAA will inform the Complainant of the availability of Title IX Supportive Measures with or without filing a Formal Title IX Complaint, as described below, consider the Complainant's wishes as to Supportive Measures, and explain the process for filing a Formal Title IX Complaint.

### *Supportive Measures*

Supportive measures are appropriate in certain circumstances and are intended to assist or protect an individual who is connected to the alleged prohibited conduct so that they may continue to participate in their professional or academic responsibilities. Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Title IX Formal Complaint or where no Title IX Formal Complaint has been filed.

Supportive measures are designed to restore or preserve equal access to the University's education program or activity (including employment) without unreasonably burdening any Party, including measures designed to protect the safety of all Parties or the University's educational environment, or deter sexual harassment.

Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, seating changes, campus escort services, mutual restrictions on contact between the Parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

The implementation of supportive measures does not indicate that the University has made a final decision about the report of an alleged violation of Title IX.

The University will engage in an interactive discussion in order to determine the most appropriate supportive measures. Supportive measures will be kept private to the extent possible.

### *Emergency Removal or Restrictions*

The University may remove or restrict a Respondent from the University or particular activities on an emergency basis if the University (1) conducts an individualized safety and risk analysis and (2) determines that an immediate threat to the physical health or safety of any employee, student, or other individual arising from the allegations of Title IX Sexual Harassment justifies removal, and provides the Respondent with notice and an opportunity to challenge the decision immediately following the removal.

The Respondent may challenge the decision by appealing to the Vice Provost for EOAA. The appeal must be in writing and may be no longer than five double-spaced, type-written pages. The appeal must



be delivered to the Vice Provost for EOAA within ten (10) business days of notice of the removal decision (via email, mail, or hand delivery). Failure to meet the deadline for appeal shall result in waiver of the right to appeal.

The imposition of an emergency removal does not indicate that the University has made a final decision about the report of an alleged violation of Title IX.

### *Administrative Leave*

The University retains the authority to place a non-student employee Respondent on administrative leave during the Title IX Grievance Process.

## Filing a Title IX Formal Complaint

In order to commence the Title IX Grievance Process, a Complainant must file a Title IX Formal Complaint.

### ➔ Who May File a Title IX Formal Complaint?

Complainants are only able to file a Title IX Formal Complaint under this process if they are currently participating in, or attempting to participate in, the education programs or activities of the University, including as an employee, student, or alum. While reports may be made anonymously, a Party may not proceed anonymously in connection with a Title IX Formal Complaint.

*Complainants who do not meet this criterion should instead follow the procedures in the EOAA Discrimination & Harassment Procedures described above.*

### ➔ How Do You File a Title IX Formal Complaint?

To file a Title IX Formal Complaint, a Complainant must submit to EOAA or the Title IX Coordinator a document, either electronically or by hard-copy, describing the facts alleged that constitute Title IX Sexual Harassment and/or Title IX Gender-Based Misconduct against a Respondent or Respondents and requesting that the University investigate and adjudicate the allegations.

If not previously provided, the Title IX Formal Complaint should include:

- The name and role (e.g., employee, student) of the Complainant and the Respondent;
- Details about the incident(s) or conduct that may have constituted Title IX Sexual Harassment and/or Title IX Gender-Based Misconduct;
- Date(s) and location(s) of the incident(s);
- The name and role of any witness(es) to the incident(s) and their telephone numbers, e-mail addresses, and street addresses if known.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

The Title IX Formal Complaint must contain the Complainant's physical or digital signature, or other indication that the Complainant is the person submitting the Title IX Formal Complaint. The document should be submitted to EOAA or the Title IX Coordinator electronically, by mail, or in person.

If a Complainant does not want to make a Formal Title IX Complaint, the Title IX Coordinator may determine that a Formal Title IX Complaint is necessary and may file and sign a Title IX Formal Complaint. The University will inform the Complainant of this decision in writing. The Complainant will not need to participate in the Title IX Grievance process at any time but will receive all notices issued throughout the Title IX Grievance Process.

Where the Title IX Coordinator signs and files a Formal Title IX Complaint, the Title IX Coordinator will not become a Party to the matter. If, at the time of filing, a Complainant's identity is unknown by the University but the University later learns of their identity, that information will be included in a subsequent Notice of Allegations.

### *Consolidation of Title IX Formal Complaints*

The University may consolidate Title IX Formal Complaints against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one Party against the other Party, where the allegations arise out of the same facts or circumstances.

## Title IX Grievance Process Notice Requirements

### ➡ Notice of Allegations of Prohibited Title IX Conduct

The University will draft and provide written Notice of Allegations of Prohibited Title IX Conduct to the known Parties. This Notice will occur as soon as possible after the University receives a Title IX Formal Complaint, assuming no extenuating circumstances.

EOAA will send the Notice of Allegations to the Parties' Columbia email address via Maxient if they are a student or employee, and by other reasonable means if they are neither. The Notice of Allegations will be sent with at least five (5) business days to prepare a response before any initial interview.

The Notice of Allegations of Prohibited Title IX Conduct will include:

- EOAA's Policies & Procedures, which includes information about the Title IX Grievance Process;
- Information about the allegations that potentially violate Title IX and sufficient details known at the time the Notice of Allegations. Sufficient details include the identities of the individual(s)



involved in the incident(s), if known, including the Complainant; information about the conduct allegedly constituting sexual misconduct, and the date and location of the alleged incident(s), if known.

- A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding a violation of Title IX prohibited conduct is made at the conclusion of the Title IX Grievance Process.
- A statement that informs the Parties that they may have an advisor of their choice, who may be, but is not required to be an attorney.
- A statement that before the conclusion of the investigation, the Parties and their advisors may inspect and review evidence obtained as part of the investigation that is directly related to the allegations raised in the Title IX Formal Complaint, including the evidence on which the University does not intend to rely in reaching a determination regarding responsibility, and evidence that both tends to prove or disprove the allegations, whether obtained from a Party or other source.
- A reminder that the University prohibits knowingly making false statements or knowingly submitting false information during the investigation.
- A statement regarding the Title IX Grievance Process timeframe.

### ➔Ongoing Notice

If, in the course of the investigation, EOAA decides to investigate allegations about the Complainant or Respondent that were not included in the Notice of Allegations of Prohibited Title IX Conduct but would constitute prohibited Title IX conduct, EOAA will notify the Parties whose identities are known of the additional allegations at their Columbia email address via Maxient. Parties will be provided sufficient time to review the additional allegations to prepare a response before any interview regarding those additional charges.

### ➔Notice of Meetings and Interviews

EOAA will provide written notice to any individual(s) whose participation is invited or expected (Complainant(s), Respondent(s), and witness(es)) of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings with sufficient time for the individual to prepare to participate.

## Title IX Formal Complaint Review

When a Title IX Formal Complaint is received by EOAA or the Title IX Coordinator, EOAA will review the Title IX Formal Complaint to evaluate whether the Title IX Grievance Process should apply to the Formal Title IX Complaint.



➡ **What is the Purpose of the Title IX Formal Complaint Review?**

Only certain complaints will go through the Formal Title IX Grievance Process. The University must determine whether the alleged conduct meets both Title IX's narrow definition of sexual harassment or other gender-based misconduct and its jurisdictional requirements. Therefore, the purpose of the Title IX Formal Complaint Review is to determine:

- Whether the alleged conduct occurred in the United States;
- Whether the alleged conduct occurred in an education program or activity of the University or within a University-owned building or building privately owned by an officially recognized student organization (e.g., a fraternity-owned building);
- Whether the alleged conduct, if true, would constitute sexual harassment or gender-based misconduct as defined by Title IX.

The Formal Title IX Grievance Process will only apply when all of these elements are met, in the reasonable determination of EOAA or the Title IX Coordinator.

➡ **What Happens if the Allegations in a Title IX Formal Complaint DO NOT Meet Title IX's Requirements?**

The University must dismiss ("Mandatory Title IX Dismissal") a Title IX Formal Complaint if the conduct alleged:

- would not constitute sexual harassment as defined under Title IX even if proved;
- did not occur in the University's education program or activity or within a University-owned building or building privately owned by an officially recognized student organization; or
- did not occur against a person in the United States.

Mandatory Title IX Dismissal does not preclude action under another provision of University policies. Allegations of sexual harassment or gender-based misconduct that fall outside of Title IX's narrow definition and jurisdictional requirements will be considered under the EOAA Discrimination & Harassment Procedures. The Title IX Formal Complaint will be dismissed as required by Title IX and the case will proceed to the EOAA Discrimination & Harassment Procedures.

The EOAA Discrimination & Harassment Procedures provide for a comprehensive and fair adjudication process of all violations of EOAA Policies & Procedures, including sexual harassment and gender-based misconduct, that do not meet the narrow Title IX definition.



➔**What Happens if the Allegations in a Title IX Formal Complaint <u>DO</u> Meet Title IX's Requirements?**

Allegations of sexual harassment and/or gender-based misconduct that fall within Title IX's narrow definition and jurisdictional requirements will continue under the Title IX Grievance Process as described below.

>  ***What happens if some allegations in a Title IX Formal Complaint meet these requirements and some do not?***

In some instances, the alleged conduct described in the Title IX Formal Complaint may include both conduct that would constitute Title IX Sexual Harassment and conduct that would not constitute Title IX Sexual Harassment (whether sexual harassment, gender-based misconduct, or other discrimination or harassment prohibited by EOAA Policies & Procedures). The Investigative Team will determine whether the allegations outside of Title IX's narrow definition and jurisdictional requirements should be adjudicated together under the Title IX Grievance Process or if those allegations should be addressed by the EOAA Discrimination & Harassment Procedures.

➔**Can Title IX Formal Complaints Be Dismissed for Any Other Reasons?**

EOAA may dismiss a Title IX Formal Complaint ("Discretionary Title IX Dismissal"), or any of the allegations within it, at any time during the Title IX Grievance Process, when:

- A Complainant notifies EOAA or the Title IX Coordinator in writing that they would like to withdraw the Title IX Formal Complaint or any specific allegations within the Title IX Formal Complaint;
- The Respondent is no longer enrolled or employed by the University; or
- If specific circumstances prevent the University from gathering evidence sufficient to reach a determination regarding the Title IX Formal Complaint or allegations within it.

➔**Results of the Title IX Formal Complaint Review?**

When EOAA reaches the conclusion that the Title IX Formal Complaint or any specific allegations within the Title IX Formal Complaint must be dismissed, EOAA will promptly send written notice of the dismissal of the Title IX Formal Complaint simultaneously to the Parties' Columbia email addresses via Maxient. The notice will include the reason(s) for dismissal.

Where the University dismisses a Title IX Formal Complaint it retains the discretion to evaluate the allegations under EOAA Policies & Procedures to determine if a violation of EOAA Policies & Procedures may have occurred. If EOAA believes that a violation may have occurred, it will notify the Parties in the notice of dismissal that it will seek to resolve the allegations under the EOAA Discrimination & Harassment Procedures.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Any Party may appeal a mandatory or discretionary dismissal using the process set out below in the Appeal of Title IX Formal Complaint Dismissal section.

## Appeal of Title IX Formal Complaint Dismissal for Title IX Purposes

Appeals pertaining to the dismissal of a Title IX Formal Complaint for Title IX purposes must be submitted to the Vice Provost for EOAA within five (5) business days from receipt of the dismissal. The appeal may not exceed three (3) single-spaced typed pages, using 12- point Times New Roman font and one-inch margins. The appeal must meet one or more of the following criteria:

### ➔ Grounds for Appeal of Title IX Formal Complaint Dismissal for Title IX Purposes

- **Procedural Irregularity**: An appeal based on procedural irregularity must identify with specificity each alleged irregularity within the consideration of the Title IX Formal Complaint and the ways in which the specified irregularity(ies) affected the decision to dismiss the Title IX Formal Complaint; or
- **New Evidence**: An appeal based on new evidence must explain why this information was not reasonably available at the time the decision to dismiss the Title IX Formal Complaint was made and how this information could affect the decision to dismiss the Title IX Formal Complaint. Information not provided because a Party declined to participate or withdrew from the process cannot be considered new information for the purpose of appeal. This includes situations where a Party declines to participate on the advice of their Title IX Party Advisor or due to a concurrent criminal investigation; and/or
- **Conflict of Interest/Bias**: An appeal based on conflict of interest or bias must explain how the Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally, or the individual Complainant or Respondent, that affected the decision to dismiss the Title IX Formal Complaint.

### ➔ Notification and Response of the Non-Appealing Party

Upon receipt of an appeal from one of the Parties, the Vice Provost for EOAA will inform the other Party and provide a copy of the appeal. The non-appealing Party will have five (5) business days from receipt of the appeal to respond should the Party wish to do so. The response may not exceed three (3) single-spaced, typed pages, using 12-point Times New Roman font and one-inch margins. If both the Complainant and the Respondent appeal, the appeals will be considered concurrently and each Party will have the opportunity to review and respond to the other Party's appeal.

**➡ Review of Title IX Complaint Dismissal Appeal**

The Vice Provost for EOAA will review the appeal and non-appealing Party's response (if provided). Within five (5) business days (of the non-appealing Party's response or the appeal if no response is provided), the Vice Provost for EOAA will communicate, in writing, the determination regarding the appeal simultaneously to both Parties.

The Vice Provost for EOAA may take the following actions:

- Uphold the decision to dismiss the Title IX Formal Complaint. In such cases, the Title IX Formal Complaint may be considered for investigation under a separate, applicable process or policy; or
- Reverse the decision to dismiss the Title IX Formal Complaint. If the Vice Provost for EOAA reverses the decision to dismiss, the Title IX Formal Complaint will be investigated as outlined in the Title IX Grievance Process.

The determination of the Vice Provost for EOAA is final. Failure to meet the deadline for appeal shall result in waiver of the right to appeal.

## Title IX Grievance Process Timeframe

The timeframe for the entire Title IX Grievance Process begins when a Title IX Formal Complaint is received by EOAA or the Title IX Coordinator. The Title IX Grievance Process will conclude no later than 120 calendar days after the University receives the Title IX Formal Complaint.

The Title IX Grievance Process may be extended for a good reason, including but not limited to the absence of a Party, a Party's advisor, or a witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities. The University will provide written notice to the Complainant and Respondent(s) of the delay or extension and the reasons for the action.

Each Party may request a one-time delay in the Title IX Grievance Process of up to five (5) business days for good cause (granted or denied in the sole judgment of EOAA) provided that the requestor provides reasonable notice and the delay does not overly inconvenience other Parties. EOAA shall have sole discretion to grant or deny any additional delays in the Title IX Grievance Process.

## Title IX Informal Resolution

The University may, at its discretion, facilitate an informal resolution process, such as mediation or facilitated dialogue, that does not involve a full investigation and adjudication where the University determines that Title IX Informal Resolution process may be appropriate and where both Parties voluntarily agree to the process in writing.



- The University will not require Parties to participate in a Title IX Informal Resolution process.
- Either party may withdraw from the Title IX Informal Resolution process and resume the Title IX Grievance Process.
- Any agreement reached through the Title IX Informal Resolution process is binding on the Parties.
- A Title IX Formal Complaint is required to be filed in order to participate in a Title IX Informal Resolution process.
- The Title IX Informal Resolution process is not available to resolve allegations that an employee sexually harassed a student.

If a Party requests a Title IX Informal Resolution and EOAA determines that the matter is appropriate to resolve through a Title IX Informal Resolution, the University will provide to each party a written notice that discloses the:

- Allegations;
- Requirements of the Title IX Informal Resolution process;
- Notice that if the mediation or facilitated dialogue results in a successful resolution of the Title IX Complaint, no investigation will be conducted and the Parties will not be permitted to resume the Title IX Grievance Process where the Title IX Complaint arises from the same allegations; and
- Notice that the University will maintain records concerning Title IX Supportive Measures, Informal Resolutions, Remedies for seven (7) years.

Statements made by Parties during a mediation or facilitated dialogue will not be used as evidence in any subsequent Title IX Grievance Process, but such statements could be disclosed in response to a subpoena in a subsequent civil or criminal proceeding.

## Title IX Party Advisors and Their Role in the Title IX Grievance Process

All Parties are entitled to one advisor of their choice who can accompany them to any meeting, interview, hearing, or other proceeding related to an incident of Title IX Sexual Harassment and Title IX Gender-Based Misconduct, including sexual assault, domestic violence, dating violence, stalking, sexual harassment, and related retaliation. A Title IX Party Advisor may provide support at and advise their advisee about any portion of the Title IX Grievance Process. However, a Title IX Party Advisor may not present on behalf of their advisee (other than for the purpose of cross-examination at a hearing) nor may they behave in a manner that is disruptive to the Title IX Grievance Process. The



University will provide all Title IX Party Advisors with necessary materials to understand their role and responsibilities in the Title IX Grievance Process.

## ➜ Requesting a Title IX Party Advisor

The University will provide a Title IX Party Advisor to a Party at no charge upon request. If a Party wants the University to assign a Title IX Party Advisor to them, the Party must make that request in writing to EOAA and a Title IX Party Advisor will be assigned promptly. University appointed Title IX Party Advisors are provided training on all aspects of the Title IX Grievance Process including their roles and responsibilities.

## ➜ Title IX Party Advisor's Role at Title IX Hearing

Complainants and Respondent may choose not to have an advisor during the Title IX Investigative Process. However, Complainants and Respondents must have a Title IX Party Advisor during a Title IX Hearing so that the Title IX Party Advisor can question the opposing Party and witnesses. Complainants and Respondents may not direct questions at each other or witnesses. Only Title IX Party Advisors and the Hearing Officer are permitted to question Parties or witnesses. Title IX Party Advisors are therefore required at the Title IX Grievance Hearing stage. A Party shall inform the University no later than five (5) business days before a scheduled Title IX Grievance Hearing that they do not have a Title IX Party Advisor.

If a Party appears at a Title IX Grievance Hearing without a Title IX Party Advisor, the University will stop the hearing in order to assign a Title IX Party Advisor to that Party in order to conduct cross-examination. If both a Party and their Title IX Party Advisor fail to appear, the University will appoint a Title IX Party Advisor for the sole purpose of cross-examining the Party(ies) and witness(es) who are present.

*See* below for more about Title IX Party Advisor's Role at a Title IX Hearing.

## ➜ Title IX Party Advisor Conduct

Title IX Party Advisors are expected to conduct themselves in accordance with the Rules of Decorum. The following provides guidance on Title IX Party Advisors' participation during different phases of the Title IX Grievance Process. Any restrictions on Title IX Party Advisor participation will be applied equally.

### *Title IX Party Advisor Conduct: Title IX Investigatory Meeting*

A Title IX Party Advisor **may**:
- Talk quietly with the advisee or pass notes in a non-disruptive manner.
- Take a break, at the advisee's request, to speak privately with the advisee.
- Review information provided to the advisee by the investigators.



A Title IX Party Advisor **may not**:
- Speak on behalf of the advisee.
- Answer questions posed to the advisee.
- Make requests (outside of scheduling and accommodations).
- Provide information to the investigators.
- Be disruptive.

### *Title IX Party Advisor Conduct: Title IX Hearings*

A Title IX Party Advisor **may**:
- Talk quietly with the advisee or pass notes in a non-disruptive manner, except during cross-examination of the advisee.
- Review the information provided to the advisee.
- Cross-examine participants in the hearing, including the other Party and witnesses.
- Assist the advisee with preparing written submissions to the Hearing Officer.

A Title IX Party Advisor **may not**:
- Speak on behalf of the advisee (other than to cross-examine the other Party and witnesses).
- Answer questions posed to the advisee.
- Be disruptive.
- Intervene in the hearing.
- Address the Hearing Officer other than to address the relevancy of a question asked or when asked a direct question by the Hearing Officer.

## ➡ Authorization to Communicate with Title IX Party Advisors

Communication with Title IX Party Advisors by EOAA must be authorized in writing by a Complainant or Respondent. Such communication could include scheduling requests, requests for information and evidence, Title IX Investigation status updates, the sharing of documents, and other Title IX Investigation related matters. Absent the Party's written consent for EOAA to include the Title IX Party Advisor on such communication, the Party will be responsible for informing the Title IX Party Advisor on all matters.

## ➡ Title IX Grievance Process Scheduling with Title IX Party Advisors

The University will not intentionally schedule meetings, interviews, hearing dates, or any other related proceedings where a Title IX Party Advisor is not available, provided that the Title IX Party Advisor act reasonably in providing available dates and works collegially to find dates and times that meet all schedules.

The University has an obligation to investigate and adjudicate promptly under Title IX and other EOAA Policies & Procedures. Therefore, EOAA cannot agree to extensive delays solely to



accommodate the schedule of a Title IX Party Advisor. The determination of what is reasonable shall be made by EOAA or the Title IX Coordinator. The University will not be obligated to delay a meeting, interview, hearing or other related proceeding more than five (5) business days due to the unavailability of a Title IX Party Advisor and may offer the Party the opportunity to obtain a different Title IX Party Advisor or use one provided by the University.

## Title IX Investigation Process
### ➔Investigative Team Assignment

The University has designated the Vice Provost for EOAA to oversee investigations of alleged violations of Title IX. The Vice Provost for EOAA will assign a team of investigators to an investigation. The investigators assigned to a matter will tailor an investigation based on the facts, nature, and complexity of the allegations and surrounding circumstances.

All investigators will have extensive training in investigating and evaluating conduct prohibited by Title IX and EOAA Policies & Procedures, and training that specifically addresses Title IX Sexual Harassment and Title IX Jurisdiction, conducting a Title IX investigation, the University's Title IX Grievance Process, conflicts of interest and bias.

The investigators will be impartial and unbiased and treat Complainants and Respondents equitably. The University may, in its sole discretion, assign appropriate non-EOAA investigator(s) or outside investigator(s) to a matter. Should a Party perceive a potential or actual conflict of interest or bias related to the investigator(s), the Party is expected to promptly raise such conflict in writing to the Vice Provost for EOAA.

### ➔Title IX Fact Gathering Stage

Investigators, acting on behalf of the Vice Provost for EOAA, have the authority and responsibility to gather information from all sources judged necessary for fair resolution of a Title IX Formal Complaint. The Investigative Team will attempt to gather information directly related to the Title IX Allegations by interviewing the Complainant, the Respondent, and any other person(s) with information directly related to the Title IX Allegations. The Investigative Team may also review personnel records, documents, and other materials that could be directly related to the Title IX Allegations.

The Investigative Team will speak to each Party in detail about the Title IX Allegation(s) and ask each Party to identify potential witnesses or other evidence to be considered. The Parties will have equal opportunity to present fact and expert witnesses (*see* "Expert Witnesses," below) and other inculpatory and exculpatory evidence (evidence that tends to prove or disprove the Title IX Allegations) through the course of the investigative process.



If the Investigative Team wishes to question a Party regarding certain evidence gathered, the Investigative Team will share that evidence with a Party in advance of a scheduled meeting to provide a fair opportunity for the Party to respond to questions presented during the meeting.

During a Title IX investigation, EOAA will record interviews of all Parties and any witnesses. These recordings will be made available to the Parties for inspection and review.

### *Requests for Evidence*

During a Title IX Investigation, the Investigative Team may request evidence from the Parties, witnesses, and any others connected to the Title IX Allegation(s). The Parties and others are expected to submit requested evidence and respond to the Investigative Team's evidentiary requests in a timely fashion.

### *Directly Related Information*

The Parties may be asked to provide a reasonable basis to the Investigative Team regarding why their proposed witness statements or other suggested evidence is directly related to the Title IX Allegation(s) before the Investigative Team will consider such proposals. Only information directly related to the Title IX Allegation(s) will be considered by the Investigative Team, and the Investigative Team retains sole discretion in determining whether witness statements or other evidence are related to the Title IX Allegation(s). The Investigative Team will objectively evaluate all information related to the Title IX Allegation(s) gathered through the course of the investigation.

Any documents submitted to the Investigative Team for consideration may be referenced in the Title IX Investigative Report and, as discussed below, will be shared with both Parties and the Parties' advisors, if applicable.

### *Submitting Evidence*

To streamline the investigative process and ensure fair review of the evidence, Parties and witnesses are expected to submit evidence to the Investigative Team in an electronic format, and in accordance with any additional directives provided by the Investigative Team. However, the Investigative Team will work with Parties and witnesses to receive evidence in another manner when the Investigative Team is made aware that electronic submission is not possible.

## ➜ Inspection and Review of Evidence

Prior to the completion of the Title IX Investigation, the Parties will have an equal opportunity to inspect and review the evidence obtained through the investigation. The purpose of the inspection and review process is to allow each Party the equal opportunity to meaningfully respond to the evidence prior to the conclusion of the Title IX Investigation.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Prior to obtaining access to any evidence, the Parties and their Title IX Party Advisors must sign an agreement not to:

- Disseminate any of the evidence subject to inspection and review that was submitted by another Party or witness or obtained from any source other than the Party themselves;
- Disseminate testimony heard or evidence obtained during the Title IX Grievance Process or in the Title IX Grievance Hearing; and
- Use such testimony or evidence for any purpose unrelated to the Title IX Grievance Process.

However, Parties are not prevented from discussing the incident(s) that are the subject of the Title IX Grievance Process.

Once signed, this Agreement may not be withdrawn, including if a Party withdraws from the Title IX Grievance Process.

Evidence that will be available for inspection and review by the Parties will be any evidence that is directly related to the allegations raised in the Title IX Formal Complaint. It will include any:

- Evidence that is directly related, even if that evidence is not relied on by the University in determining responsibility;
- Inculpatory or exculpatory evidence (i.e., evidence that tends to prove or disprove the Title IX Allegation(s)) that is directly related to the allegations, whether obtained from a Party or other source.
- Recordings of interviews with Parties and witnesses.

All Parties must submit any evidence they would like the Investigative Team to consider prior to the inspection and review of evidence by the Parties.

### *Sharing the Evidence for Inspection and Review*

The University will make the evidence available for each Party and each Party's Title IX Party Advisor, if any, to inspect and review through an electronic format. The University is not required to use any specific process or technology to provide the evidence and shall have the sole discretion to determine the format and any restrictions or limitations on access.

### *Timeframe to Inspect and Review Evidence*

The Parties will have ten (10) business days to inspect and review the evidence and submit a written response by email to the Investigative Team. Any written response to the evidence by the Parties will be considered by the Investigative Team prior to completion of the Title IX Investigative Report.

Parties may request a reasonable extension of time to inspect and review the evidence.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

### ➔ Title IX Investigation Protocols

In conducting the investigation and drafting the Title IX Investigative Report, the Investigative Team will follow the protocols set forth below:

#### *Evaluating Evidence*

Recommendation(s) made by the Investigative Team regarding whether the conduct alleged in the Notice of Allegation may have constituted conduct prohibited by Title IX will be made using the preponderance of the evidence standard. This means that the Investigative Team's recommendation(s) will reflect whether the evidence shows that it is more likely than not that the behavior was prohibited by Title IX.

During the Title IX Grievance Process, the Respondent is presumed not responsible. The University bears the burden of showing evidence to support its recommendation regarding responsibility. The burden is not on the Respondent to prove that they did not engage in prohibited conduct, nor is it on the Complainant to prove that the Respondent did engage in prohibited conduct.

#### *Preserving Evidence*

The Investigative Team will direct the Complainant, Respondent, witnesses, and other interested individuals to preserve any relevant evidence, which may include phone logs, text messages, electronic communications or other evidence relating to the alleged Title IX misconduct. Evidence is relevant if it tends to prove or disprove the Title IX Allegations.

#### *Character Witnesses*

Character witnesses are permitted solely in the Title IX Grievance Process. While character witnesses will be permitted, the decision-maker will be instructed to afford very low weight to any non-factual character testimony of any witness.

#### *History of Prior Sexual Behavior in Sexual Assault Cases*

Questions and evidence regarding the Complainant's prior sexual behavior are irrelevant and prohibited, subject to two, limited exceptions: (1) where evidence of prior sexual behavior is offered to prove someone other than the Respondent committed the alleged offense, or (2) where prior sexual behavior evidence is specifically about the Parties' shared sexual history and is offered to prove consent. If either Party offers such information, the other will have the right to respond.

#### *Medical Information*

Any Party's medical, psychological, or similar records cannot be accessed, considered, disclosed, or otherwise used as part of this investigative process without the Party's voluntary, written consent. Each Party has the right to request that evidence regarding their mental health diagnosis or treatment be excluded from consideration on the basis that it is not relevant to the allegations. Any medical



information that is not directly related to the allegations but that is included in an otherwise-relevant medical record may be redacted from any documents shared with the other Party.

### Legally Recognized Privilege

Any information protected by a legally recognized privilege (e.g. attorney-client, nurse-patient, doctor-patient) is deemed irrelevant and will not be considered in the Title IX Investigative Process, unless properly waived by the Party who holds the privilege.

### Information from Expert Witnesses

A Party may request that information be considered from an expert witness when such information is deemed relevant to the Title IX Allegation(s). However, in order for an expert report or testimony to be considered at a Title IX Grievance Hearing, the expert must be available for questioning and cross-examination.

Subject to other limitations identified in the Title IX Grievance Process, the Investigative Team may include in the investigative record medical, forensic, technological, or other expert testimony and materials (such as writings and recordings) that the Investigative Team deems relevant and reliable. The Investigative Team has the discretion to determine the relevance and reliability of any expert testimony and materials, and, accordingly, the Investigative Team will determine what, if any, expert testimony and materials will be received into the investigative file.

### Credibility Assessment

The Investigative Team considers the following factors when assessing the credibility of Parties and witnesses: consistency or inconsistency of accounts of events over time; motive to lie; any corroborating evidence; and reasonable and logical statements and details.

## ➜ Conclusion of the Title IX Fact Gathering Stage

The Investigative Team will inform the Parties in writing when the fact gathering stage of the investigation has concluded. No additional witnesses will be interviewed and no additional evidence or responses to the evidence may be submitted to the Investigative Team at that time.

## ➜ Title IX Investigative Report

Once the inspection and review of the evidence by the Parties and the fact gathering stage has concluded, the Investigative Team will draft a Title IX Investigative Report. A Title IX Investigative Report fairly summarizes the evidence that the Investigative Team determines to be relevant. Evidence is relevant if it tends to prove or disprove the Title IX Allegations. It also may be referred to as inculpatory or exculpatory evidence.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

EOAA and the Investigative Team retain the right to make recommended findings or conclusions in the Title IX Investigative report. However, the Investigative Team shall not make determinations of responsibility in the Title IX Investigative Report.

A copy of the report will be provided to the Parties, and their Title IX Party Advisors, if the Parties so choose, at least ten (10) business days prior to a Title IX Hearing or any other date when Respondent's responsibility may be determined. The Title IX Investigative Report will be sent to the Parties in digital form and neither Parties nor Title IX Party Advisors shall download, copy, publish, distribute or forward the Title IX Investigative Report. Copy includes but is not limited to: audio or video recording, streaming, photographing, scanning, transcribing, or any other form that conflicts with the letter and spirit of this directive.

A single Title IX Investigative report may be used for allegations arising out of the same set of facts or circumstances, where there are multiple Complainants or Respondents.

The Parties are then permitted to submit a written response of no more than ten (10) type-written, double-spaced pages to EOAA for distribution to the Hearing Officer. Any responses should be received by EOAA no later than 48-hours in advance of the hearing. Parties' written responses will be provided to each other for review but no additional responses will be permitted.

## Title IX Grievance Hearing

The objective of a Title IX Grievance Hearing is to decide based on the "preponderance of evidence," whether it is more likely than not that the alleged conduct falls within the definition of Title IX Sexual Harassment and/or Title IX Gender-Based Misconduct and whether the Respondent is responsible for the alleged conduct.

### ➔ Pre-Title IX Grievance Hearing Conference

In order to promote a fair and expeditious live hearing, the Parties and their advisors will attend a pre-hearing conference with the Hearing Officer. The Hearing Officer is responsible for directing the pre-hearing conference. The pre-hearing conference assists the Parties and their Title IX Party Advisors in understanding the parameters of the live hearing and allows for significant issues to be addressed in advance of the hearing.

At the pre-hearing conference, the Hearing Officer will address the conduct expectations for the Parties and Title IX Party Advisors at the live hearing (*see also*, "Rules of Decorum"). Additionally, the Parties must provide the Hearing Officer with a list of the witnesses they intend to cross-examine and exhibits they intend to present at the live hearing. All references to witnesses and exhibits will be made to those contained in the investigative file.



*Submission of Proposed Evidence*

The Hearing Officer will also ensure that no evidence regarding prior sexual history of the Parties is considered, unless the Hearing Officer determines at the pre-hearing conference that the evidence meets at least one of the permitted exceptions.

The Hearing Officer, only in exceptional circumstances, grants requests to present evidence not already in the investigative file and retains complete authority to determine how or whether such new evidence may impact the hearing (e.g., if the hearing must be continued until a later date for the Investigative Team to review and present the new evidence to the Parties).

*Relevance Determinations*

During the hearing itself, the Hearing Officer has complete authority to assess any questions presented by the Title IX Party Advisors for relevancy. The Hearing Officer will make a determination regarding relevance before any Party or witness is expected to provide an answer.

## ➜ Title IX Grievance Hearing: Format

- Hearings will be conducted live, and may be conducted in-person or virtually at the discretion of the University.
- Title IX Grievance Hearing participants, including Parties, witnesses, and Title IX Party Advisors, may appear at an otherwise in-person hearing virtually with technology that allows participants to simultaneously see and hear each other.
- Title IX Grievance Hearings are closed proceedings. No one other than the Title IX Hearing Officer, the Respondent, the Complainant, their respective Title IX Party Advisors, witnesses, the Investigative Team, Title IX Coordinator, or other necessary University personnel may be present during the proceeding.
- Live hearings may be conducted with all participants physically present in the same location, or, at the University's discretion, may occur virtually using technology that will enable some or all participants to participate from remote locations. The technology will permit participants to simultaneously view and hear each other.
- The live hearing will be recorded and a copy of the recording will be made available to the Respondent and the Complainant for their inspection and review.
- Participants in the live hearing may not record the hearing. Cell phones and recording devices may not be used in the hearing room(s) or to record hearings conducted virtually unless approved by the Hearing Officer in advance.

## ➜ Title IX Grievance Hearing: Timing

- EOAA, whenever possible, will give the Complainant and the Respondent at least ten (10) business days advance notice of the hearing.



- Requests to postpone the hearing may be granted at the discretion of EOAA based on a compelling reason.
- Because of administrative complexity, where possible, Parties should make a postponement request no less than five (5) business days prior to the time of the hearing.

If EOAA determines that multiple sessions are needed or it is necessary to continue the hearing at a later time, all participants will be notified and EOAA will attempt to accommodate participants' schedules and complete the hearing as promptly as possible.

## ➜ Title IX Grievance Hearing: Parties

- The Parties cannot waive the right to a live hearing.
- The University may still proceed with the live hearing in the absence of a Party, and may reach a determination of responsibility in their absence, including through any evidence gathered.
- The University will not threaten, coerce, intimidate or discriminate against a Party in an attempt to secure the Party's participation.
- The decision-maker cannot draw an inference about the determination regarding responsibility based solely on a Party's absence from the live hearing or refusal to answer questions at the hearing.
- The Parties shall be subject to the University's Title IX Rules of Decorum.

## ➜ Title IX Grievance Hearing: Advisors

As described above, Parties have the right to select a Title IX Party Advisor of their choice, who may be, but does not have to be, an attorney.

- The Parties are not permitted to conduct cross-examination. Cross-examination may only be conducted by the Title IX Party Advisor. As a result, if a Party does not select a Title IX Party Advisor, the University will select a Title IX Party Advisor to serve in this role for the limited purpose of conducting the cross-examination at the hearing at no fee or charge to the Party.
- The Title IX Party Advisor is not prohibited from having a conflict of interest or bias for or against complainants or respondents generally, or for or against the Parties to the particular case.
- The Title IX Party Advisor is not prohibited from being a witness in the matter.
- If a Party does not attend the live hearing, the Party's Title IX Party Advisor may appear and conduct cross-examination on their behalf.
- If neither a Party nor their Title IX Party Advisor appear at the hearing, the University will assign a Title IX Party Advisor to appear on behalf of the non-appearing Party.



**➡Title IX Grievance Hearing: Witnesses**

- Witnesses cannot be compelled to participate in the live hearing, and have the right not to participate in the hearing free from retaliation. Witnesses possessing relevant information are encouraged to cooperate and provide testimony at a Title IX Grievance Hearing.
- Witnesses shall be subject to the University's Title IX Rules of Decorum.

**➡Title IX Grievance Hearing: Hearing Officer**

The Hearing Officer is the decision-maker tasked with evaluating and analyzing all relevant information in the Title IX Investigative Report, as well as any relevant additional submissions and information presented by the Parties in the hearing process. The Hearing Officer determines whether a violation of Title IX occurred based on the preponderance of evidence standard.

The University's Hearing Officers are specially trained[9] administrators (including faculty serving in administrative roles) or consultants, who are selected to avoid possible conflicts of interest and scheduling issues.

The Complainant and Respondent will be informed of the Hearing Officer's identity and afforded an opportunity to raise any perceived conflicts of interest or bias before the Title IX Grievance Hearing. No Hearing Officer will also have served as the Title IX Coordinator, a Title IX Investigator, or Title IX Party Advisor to any Party in the case. No Hearing Officer may serve as an Appellate Officer in the case.

**➡Title IX Grievance Hearing: Participation**

The Complainant, the Respondent, their respective Title IX Party Advisors, witnesses, and the Investigative Team are afforded the opportunity to participate in the hearing. Each participating individual will have access to a private room or "break out room" for the duration of the hearing and may choose to participate in the proceedings via video conference. When it is an individual's turn to appear before the Hearing Officer, that person will appear separately before the Hearing Officer. The Complainant and Respondent may be accompanied by or may be in contact with a Title IX Party Advisor at all times. If the hearing is conducted wholly or partially through video conference, an administrator will ensure that each Party has the opportunity to appear before or speak directly to the Hearing Officer and appropriately participate in the questioning and cross-examination process.

---

[9] Hearing Officers will receive regular training on the definition of sexual harassment under Title IX, the scope of the University's education program or activity, how to conduct hearings, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. Hearing Officers will also receive training on the technology used at the hearing and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual activity or prior sexual behavior are not permitted.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

## ➔ Title IX Rules of Decorum

All participants, including Parties, witnesses, and Title IX Party Advisors, are expected to participate in a respectful and non-abusive manner during the hearing.

- Where any hearing participant is referencing another person, including other hearing participants, they should use the person's correct name or role (e.g., Complainant, Respondent, etc.).
- Where any hearing participant is referencing another person, including other hearing participants, hearing participants are expected to use the other participants' correct pronouns.
- As described above, during cross-examination and questioning, the Hearing Officer must approve all questions before the Party or witness responds. The Hearing Officer and Title IX Party Advisors are expected to restrict the use of irrelevant questions (e.g., questions that are redundant, compound, or do not seek relevant information).
- Title IX Party Advisors may not use profanity or make personal attacks on a Party or witness. Questions are meant to test knowledge or understanding and may not include accusations.
- The following behaviors are strictly prohibited for all participants:
  - Interrupting other participants;
  - Yelling, screaming, badgering;
  - Throwing, hitting, or any similarly aggressive gesture;
  - Threatening statements or gestures (unless directly relevant to the underlying allegations);
  - Use of slurs or objectively offensive gestures (unless directly relevant to the underlying allegations);
  - Intentionally violating the physical space of another hearing participant;
  - Engaging in any behavior which deliberately disrupts the hearing process.

Title IX Party Advisors are expected to treat all Parties and witnesses in a respectful manner at all times, including during the cross-examination portion of the hearing. A Title IX Party Advisor should not engage in cross-examination that is abusive, intimidating or disrespectful. A Title IX Party Advisor may not badger a Party or witness, engage in unnecessarily repetitive questioning, or lean into the personal space of a Party or witness.

Violations of the Rules of Decorum may be raised by either a Title IX Party Advisor or the Hearing Officer. If a Title IX Party Advisor refuses to comply with the Rules of Decorum (for example, by insisting on yelling at the other Party), the Title IX Party Advisor may be removed from the hearing. If the Hearing Officer determines that a participant has violated the Rules of Decorum, the Hearing Officer will first notify the offending person of the violation. If there is another violation, the Hearing Officer has the discretion to remove the offending participant. The Hearing Officer will document any decision to remove a hearing participant in the written determination.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Where a Title IX Party Advisor is removed, the University will provide a new Title IX Party Advisor if it provided the original advisor. If the original Title IX Party Advisor was selected by the Party, the Party will have five (5) business days to replace the Title IX Party Advisor or request one in writing from the University.

These rules apply equally to both Parties, their Title IX Party Advisors, decision-makers, witnesses, and any other person present during the hearing.

## ➔ Title IX Grievance Hearing Order of Events

In general, all Title IX Grievance Hearings will proceed as follows:
- The Hearing Officer will open and establish rules and expectations for the hearing;
- Complainant's opening statement;
- Respondent's opening statement;
- The Hearing Officer conducts an initial round of questioning;
- Title IX Party Advisor Cross-Examination
  - The Hearing Officer has complete authority to assess any questions by the Title IX Party Advisors for relevancy.
  - The Hearing Officer will have the authority to pause cross-examination at any time for the purposes of asking the Hearing Officer's own follow up questions and any time as necessary to enforce the established Rules of Decorum.
  - Should a Party's Advisor choose not to cross-examine a Party or witness, the Party declining to ask questions shall affirmatively waive cross-examination through a written or oral statement to the Hearing Officer.
- The Hearing Officer asks follow up questions to Parties and witnesses
- Complainant's closing statement
- Respondent's closing statement

### *Opening Statements*

The Complainant and the Respondent may provide opening statements to the Hearing Officer. Opening statements may not exceed seven (7) minutes. The Parties' Title IX Party Advisors may assist them with drafting an opening statement and the Parties may read from a written document. However, the Parties' Title IX Party Advisors may not present the opening statement on their behalf.

### *Questions by the Hearing Officer*

The Hearing Officer may ask questions of the Complainant, Respondent, and witnesses, including the Investigative Team. Generally, questions will focus on statements made by the Parties, information contained in the Title IX Investigative Report, the EOAA's or the Investigative Team's recommendation (if any), and any other information provided to the Hearing Officer. The Hearing



Officer will ask any questions they have to the hearing participants prior to the Title IX Party Advisors' cross-examination of the participants and may ask any necessary follow up questions after questions from the Title IX Party Advisors.

### *Cross-Examination by the Title IX Party Advisors*

Each Party's Title IX Party Advisor may ask ***relevant*** questions to the opposing Party and witnesses (including the Investigative Team). Relevant questions include those questions that tend to prove or disprove an element of the allegation(s) being considered by the Hearing Officer. Before a Complainant, Respondent, or witness answers a question, the Hearing Officer will determine whether the question is relevant and therefore can be answered. If the Hearing Officer decides to exclude a question, they will provide a brief explanation as to why the question is not relevant. The Title IX Party Advisor will have the opportunity to offer a brief explanation in response as to why they believe their question is relevant. The Hearing Officer may accept or reject that explanation without any additional explanation required.

The Parties may not cross-examine each other or question or cross-examine any witnesses. If a Party does not have a Title IX Party Advisor, the University will provide a Title IX Party Advisor, as described above, for the live hearing without fee or charge to that Party. The Title IX Party Advisor will be selected by the University and is not required to be an attorney even if the opposing Party's Title IX Party Advisor is an attorney. A Party should alert the Hearing Officer or EOAA as early as possible if the Party needs the University to appoint a Title IX Party Advisor so that the arrangements can be made and the process can continue to progress in a timely manner.

### *Closing Statements*

At the conclusion of the cross-examination by both Parties' Title IX Party Advisors and questioning by the Hearing Officer, the Complainant and Respondent will have the opportunity to present closing statements to the Hearing Officer. Closing statements may not exceed seven (7) minutes. Closing statements must be presented by the Parties, not their advisors. The Title IX Party Advisors may assist in the preparation of the closing statement and the Parties may read from a written document.

## Title IX Determinations and Title IX Sanctions
### ➜ Title IX Determinations Regarding Responsibility

Following the Title IX Investigation and conclusion of the Title IX Hearing, the Hearing Officer will render a determination regarding whether the Respondent is responsible for the alleged violation(s) of the prohibitions against Title IX Sexual Harassment, Title IX Gender-Based Misconduct, and any other allegations before the Hearing Officer. The Hearing Officer will use "preponderance of the evidence" as the standard of proof to determine whether the alleged violation(s) occurred. Preponderance of the evidence means that the Hearing Officer must determine whether, based on the evidence presented, it is more likely than not that the Respondent engaged in the alleged conduct. If



the Hearing Officer determines that the Respondent's conduct was prohibited by Title IX (or EOAA Policies & Procedures for non-Title IX allegations), the Hearing Officer will forward the determination to the Sanctioning Officer to decide, in consultation with EOAA, upon the appropriate discipline.

- The Hearing Officer will not draw inferences regarding a Party's or witness' credibility based on the Party's or witness' status as a Complainant, Respondent, or witness, nor will it base its judgments on stereotypes about how a Party or witness would or should act under the circumstances.
- The Hearing Officer will afford the highest weight relative to other testimony to first-hand testimony by Parties and witnesses regarding their own memory of specific facts.
- Except where specifically barred by the May 2020 Title IX regulations, a witness' testimony regarding third party knowledge of the facts at issue will be allowed, but will generally be accorded lower weight than testimony regarding direct knowledge of specific facts.
- The Hearing Officer will afford lower weight to non-factual testimony of expert witnesses relative to fact witnesses, and any expert testimony that is not directed to the specific facts that occurred in the case will be afforded lower weight relative to fact witnesses, regardless of whether the expert witness testimony is the subject of questioning and cross-examination and regardless of whether all Parties present experts as witnesses.
- The Hearing Officer will afford very low weight to any non-factual character testimony of any witness.
- While polygraph tests and the processes and testimony about them are permitted, the Hearing Officer will afford lower weight to such processes relative to the testimony of fact witnesses.
- Where a Party's or witness' conduct or statements demonstrate that the Party or witness is engaging in retaliatory conduct, including but not limited to witness tampering and intimidation, the Hearing Officer may draw an adverse inference as to that Party or witness' credibility, or an adverse inference as to the testimony of any witness whose testimony appears to have been influenced by such intimidation or witness tampering. Witness tampering includes attempting to alter, prevent, or interfere with a witness's statement or testimony and is prohibited.

The Hearing Officer will find the Respondent responsible or not responsible after a review of all of the statements and evidence summarized in the Title IX Investigative Report that may be considered in light of the rules outlined above, the written statements submitted by the Complainant and the Respondent, and the statements, testimony, and evidence presented at the hearing. The Hearing Officer will generally render a determination decision within ten (10) business days after the conclusion of a hearing. Where Title IX Sanctions are imposed, the Sanctioning Officer will have an additional five (5) business days following the receipt of a Hearing Officer's determination. The determination with a sanctioning decision, if applicable, will be delivered simultaneously to the Parties' Columbia email address via Maxient, and will include the following:



1. Identification of the allegations potentially constituting sexual harassment as defined by Title IX;
2. A description of the procedural steps taken from the receipt of the Title IX Formal Complaint through the determination, including any notifications to the Parties, interviews with Parties and witnesses, site visits, methods used to gather other evidence, and hearings held;
3. Findings of fact supporting the determination;
4. Conclusions regarding the application of Title IX to the facts;
5. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the University imposes on the Respondent, and whether remedies designed to restore or preserve equal access to the University's education program or activity will be provided by the University to the Complainant; and
6. The University's procedures and permissible bases for the Complainant and Respondent to appeal.

## ➜ Title IX Sanctions

Title IX Sanctions may be imposed in cases where the Hearing Officer has determined that it was more likely than not that the alleged behavior occurred and constituted Title IX Sexual Harassment and/or Title IX Gender-Based Misconduct, and/or another policy violation considered through the process. The range of possible sanctions may include, but is not limited to, reprimand/warning, change of the Respondent's job duties, disciplinary probations, revocation of honors and awards, restricted access to University facilities or activities, a "no contact" order, movement of a Respondent's University-provided residence, relocation of Respondent's workplace/station, demotion, administrative leave, with or without pay suspension, referral to another University policy or agreement for a determination regarding the Respondent's employment status, and dismissal or restriction from University employment. The University may also require training or educational intervention.

The Sanctioning Officer is the designated supervisor(s) and will be tasked with implementing appropriate discipline for the Respondent. Appropriate discipline is determined by the facts and circumstances of the case. The designated supervisor(s) should consult with EOAA in making that assessment. Factors that may be considered include instances of previous prohibited conduct, the seriousness of the violation, the totality of the information available, and any extenuating or aggravating information deemed relevant.

Where a sanction is imposed, the sanction and its rationale will be included in the written determination.



# Title IX Appeal of Determination

Complainants and Respondents are afforded appeal rights as it pertains to the determination of the Hearing Officer. Title IX Appeals must satisfy one or more of the following criteria:

- **Procedural Irregularity**: An appeal based on procedural irregularity must identify with specificity each alleged irregularity within the investigation or hearing, and the ways in which the specified irregularity(ies) affected the outcome of the matter. Disagreement with the finding or sanction is not, by itself, a ground for appeal;
- **New Evidence**: An appeal based on new evidence must explain why this information was not reasonably available at the time the determination was made and how this information could affect the outcome of the matter. Information not provided because a Party declined to participate or withdrew from the process cannot be considered new information for the purpose of appeal. This includes situations where a Party declines to participate on the advice of their Title IX Party Advisor or due to a concurrent criminal investigation; or
- **Conflict of Interest/Bias**: An appeal based on conflict of interest or bias must explain how the Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against complainants or respondents generally, or the individual Complainant or Respondent, that affected the outcome of the matter.

The appeal of the determination must be submitted to the Vice Provost for EOAA within ten (10) business days from the date the determination was issued. The appeal may not exceed five (5) single-spaced, typed pages using 12-point Times New Roman font with one-inch margins. No attachments or exhibits will be accepted. References to evidence should be made to the materials included in the hearing record. The Vice Provost for EOAA will notify the non-appealing Party upon receipt of the appeal and provide a copy. The non-appealing Party may provide a written response to the appeal within five (5) business days that may not exceed five (5) single-spaced, typed pages using 12-point Times New Roman font with one-inch margins. If both the Complainant and the Respondent appeal, the appeals will be considered concurrently and each Party will have the opportunity to review and respond to the other Party's appeal within five (5) business days not to exceed three (3) single-spaced, typed pages using 12-point Times New Roman font with one-inch margins.

If the appeal outlines the appropriate criteria for consideration, the Vice Provost for EOAA will designate an Appellate Officer[10] for review. An Appellate Officer is a senior officer of the University.

---

[10] The Appellate Officer will receive relevant training at least once a year on how the adjudicatory and appeal processes work, the definition of Title IX Sexual Harassment, the scope of the University's education program or activity, how to conduct an investigation and the grievance process including hearings, and appeals, as applicable, how to serve



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

The Complainant and Respondent will be informed of the Appellate Officer's identity and are expected to raise any perceived conflicts of interest or bias. The Appellate Officer will not have served as a Hearing Officer, the Title IX Coordinator, a Title IX Investigator, or Title IX Party Advisor to any Party in the case.

The Appellate Officer will not initiate a review of substantive issues of fact, or reach a new determination of whether a violation of the prohibition against Title IX Sexual Harassment and/or Title IX Gender-Based Misconduct has occurred. The Appellate Officer is strictly limited to determining if an appeal should be granted based on the above-cited criteria for appeal.

In making an assessment, the Appellate Officer will have access to and the ability to review all applicable documents, including the Title IX Formal Complaint, the Title IX Investigative Report, and exhibits that may be considered in light of the rules outlined above, written statements submitted to the Hearing Officer, and a recording of the hearing. Statements that were not considered by the Hearing Officer because the Party or witness was absent will be identified as such. The Appellate Officer may also request additional information from the Title IX Coordinator, Investigative Team, or Hearing Officer regarding issues of procedural irregularity or new evidence as applicable. The Parties will receive timely and equal access to any new information provided to the Appellate Officer in response to such requests. Additionally, in the event a Party submits an appeal containing inaccurate facts or information outside the scope of the Interim Title IX Grievance Process, those portions of the information may be redacted and/or the Title IX Coordinator or EOAA may provide a curative instruction to the Appellate Officer.

The Appellate Officer may take the following actions:

- Deny the appeal, thereby upholding the decision of the Hearing Officer; or
- Grant the appeal and return the matter to the Hearing Officer, Investigative Team, a different Hearing Officer or Investigative Team for further consideration with instructions regarding re-consideration.

If the matter is returned to the Hearing Officer or Investigative Team, the Appellate Officer will provide instructions regarding the nature and extent of the reconsideration. Following reconsideration by the Hearing Officer or Investigative Team, further proceedings will be conducted as appropriate. In

---

impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias, and the sensitive issues in reviewing these cases.

COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

instances where an appeal is granted for possible conflict of interest/bias, the Vice Provost for EOAA may assign other University personnel for reconsideration of the matter.

The Appellate Officer will notify the Vice Provost for EOAA of their decision, and the Vice Provost for EOAA will simultaneously notify the Complainant and the Respondent of the Appellate Officer's decision in writing. Appeal decisions will be rendered generally within twenty (20) business days after the receipt of the last written submission by either of the Parties, depending on the availability of the Appellate Officer at the time of the appeal. EOAA will notify the Parties if there will be a delay. There is no further University recourse beyond the decision of the Appellate Officer.

Failure to meet the deadline for appeal shall result in waiver of the right to appeal. The University reserves the right to investigate and take any necessary action of its own accord based on new information or events that were not known during an initial investigation. A determination will be considered "final" after the time period to file an appeal has expired, or if a Party does file an appeal, after the appeal decision has been sent to the Parties.

Any discipline imposed prior to the filing of the appeal will stand during the pendency of the appeal.

## Record Keeping

The University will maintain records concerning Title IX-related matters in accordance with the requirements stated in the May 2020 Title IX regulations, which may include, for example, records related to Supportive Measures, Remedies, the written determination of the Hearing Officer, Sanctions, Appeals, and training materials used to train Title IX Coordinators, investigators, or decision-makers.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# OTHER REPRESENTATIONS

## University Authority/Amendments

The University may amend EOAA Policies & Procedures periodically. Nothing in EOAA Policies & Procedures shall affect the authority of the University to take such actions or alter, change, or modify EOAA Policies & Procedures as it deems appropriate to further the educational mission or to protect the safety and security of the University community. The information in EOAA Policies & Procedures is intended to be explanatory and not contractual in nature.

## No Conflicts of Interest or Bias

Any individual designated by the University as an investigator, Title IX Coordinator, decision-maker, or any person designated by the University to facilitate a resolution process, except as explicitly provided above, will not have a conflict of interest or bias for or against complainants or respondents generally or an individual Complainant or Respondent.

## Training & Education

The University ensures that Title IX Coordinator(s), investigators, decision-makers, or any person designated by the University to facilitate a resolution process receives training on University policies and procedures, the scope of the University's education program or activity, how to conduct an investigation, hearing, Interim Title IX Grievance Process, appeals, and resolution processes, as applicable, and how to serve impartially, including by avoiding prejudging the facts at issue, conflicts of interest, and bias. Training also includes the use of any technology necessary at a hearing and on issues of relevance of questions and evidence.

The University also provides training to University-appointed advisors.

## Designees

While EOAA Policies & Procedures identify University office(s) or employee(s) who will typically perform certain roles or duties, the University may designate other University offices, employees, or outside consultants to perform any roles or duties described in the EOAA Policies & Procedures.



# APPENDICES

## Appendix A: Applicable Policies and Procedures

The following chart sets forth the applicable policy and procedure(s) based upon type of misconduct alleged and the identity of the Respondent:

| Nature of Complaint: | For Complaints *Against*: | Applicable Policy & Procedure: | Report To: |
|---|---|---|---|
| Discrimination and harassment, including sexual harassment and gender-based misconduct | Columbia Faculty, Staff, or Third Parties | EOAA Policies & Procedures | EOAA |
| Discrimination and harassment, including sexual harassment and gender-based misconduct | Teachers College Faculty or Staff | Teachers College Policy and Procedures on Discrimination and Harassment | TC Diversity and Community Affairs |
| Discrimination and harassment, including sexual harassment and gender-based misconduct | New York Presbyterian Hospital Employees | New York Presbyterian Hospital Equal Employment Opportunity Policy; Harassment Policy | EOAA and Human Resources at NYP |
| Gender-based misconduct | Students at Columbia or Teachers College | Gender-Based Misconduct Policy for Students | Student Conduct & Community Standards |
| Gender-based misconduct | Barnard Faculty, Staff, or Students | Barnard College Grievance Procedures for Gender-Based and Sexual Misconduct | Office of Title IX & Equity |
| Discrimination or harassment (other than gender-based misconduct) | Barnard Faculty, Staff, or Students | Barnard Policy Against Discrimination and Harassment | Office of Title IX & Equity |



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

## Appendix B: University Contacts

The Office of Equal Opportunity and Affirmative Action has overall responsibility for EOAA Policies & Procedures. It coordinates compliance activities under University policies and the applicable federal, state and local laws and has been designated as the University's Compliance Office for Title IX, Section 504 of the Rehabilitation Act, and other equal opportunity, nondiscrimination, and affirmative action laws. The Vice Provost leads the Office of Equal Opportunity and Affirmative Action and is designated as the University's Compliance Officer for Section 504 of the Rehabilitation Act.

Employees, students, and third Parties may contact EOAA to inquire about their rights under University policies, request assistance, seek information about filing a complaint, or report conduct or behavior that may violate these policies. Departments, programs, and individual employees may request trainings and workshops about conduct that may constitute a violation of University Policy, their duties and responsibilities under the policies, and to inform them of the procedures that are available to manage alleged violations.

**Office of Equal Opportunity and Affirmative Action**
https://eoaa.columbia.edu
103 Low Library, MC 4333
(212) 854-5511
eoaa@columbia.edu

**Vice Provost, EOAA**
**Jeri Henry**
Section 504 Compliance Officer
(212) 854-5918
jh3079@columbia.edu

**Director of Training & Education, EOAA**
**Seth M. Marnin**
(212) 854-9952
smm2345@columbia.edu

**Senior Associate Director, EOAA**
**Sheanine Allen**
(212) 854-6816
sa3361@columbia.edu

**Title IX Coordinator**
**Marjory D. Fisher**
(212) 854-1276
mdf2166@columbia.edu



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

**Deputy Title IX Coordinator**
**Director of Investigations, EOAA**
**Jazmin Taylor**
Faculty and Staff Concerns
(212) 851-2730
jt2903@columbia.edu

**Deputy Title IX Coordinator**
**Senior Director Title IX Investigations, Gender-Based Misconduct Office**
**Colleen Walsh**
Student Concerns
(212) 854-1717
cw3385@columbia.edu

**Deputy Title IX Coordinator**
**Jacqueline Blackett**
Athletics
(212) 854-2544
jpb3@columbia.edu

**Title IX Liaisons**
**Lamont-Doherty Earth Observatory:**

**Mackenzie Carr** (he/him/his)
Assistant Director, DEIAB
Lamont-Doherty Earth Observatory
845-365-8338
mcarr@ldeo.columbia.edu

**Victoria Nazario**
(845) 365-8495
vicky@admin.ldeo.columbia.edu

**The School at Columbia:**
**Kevin Fittinghoff**
(212) 851-4217
kf2288@columbia.edu

 COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# Appendix C: Resource List

## Confidential Resources

**Confidential University resources who <u>do not</u> have a duty to report include:**

**Sexual Violence Response & Rape Crisis/Anti-Violence Support Center (SVR)**
- Morningside: Alfred Lerner Hall, Suite 700
- CUIMC: 60 Haven Ave, Bard Hall, Suite 206
- Helpline: 212-854-HELP (4357) (Available 24 hours a day year-round)

**Ombuds Office**
- Morningside: 660 Schermerhorn Ext. | 212-854-1234
- Manhattanville: 615 West 131st St | 212-854-1234
- CUIMC: 154 Haven Ave, Room 412 |212 -304-7026

**Medical Services**
- Morningside: John Jay, 4th Floor | 212-854-7426
- CUIMC: 100 Haven Ave, Tower 2, 2nd Floor| 212-305-3400
- Barnard: Lower Level Brooks Hall | 212-854-2091

**Counseling and Psychological Services at Columbia**
- Morningside: Alfred Lerner Hall, 5th and 8th Floors | 212-854-2878
- CUIMC: 100 Haven Ave, Tower 2, 2nd Floor | 212-305-3400
- Barnard: 100 Hewitt Hall, 1st Floor | 212-854-2092 After hours 855-622-1903

**University Pastoral Counseling**
- Office of the University Chaplain: (Ordained Clergy) Earl Hall Center | 212-854-1493

**Columbia Office of Disability Services** (Confidential Resource for Columbia Only)
- Morningside: Wien Hall, Suite 108A | 212- 854-2388
  http://www.health.columbia.edu/disability-services

University employees working in a confidential capacity will not report information shared with them, unless requested by the victim.

***Only confidential employees can guarantee confidentiality, and no other employee should promise it.***



## On-Campus Resources for Staff and Faculty

**Office of Equal Opportunity and Affirmative Action**

eoaa@columbia.edu

Contact:        Jeri Henry, Vice Provost, EOAA

535 West 116th Street

103 Low Library

New York, NY 10027

(212) 854-5511

**Columbia University Human Resources**

hr-operations@columbia.edu

Contact:        Daniel Driscoll, Vice President and Chief Human Resources Officer

622 West 132nd Street

Studebaker - 4th Floor

New York, NY 10027

(212) 851-7008

**Department of Public Safety**

publicsafety@columbia.edu

Contact:        Deidre Fuchs, Acting Vice President, Public Safety

*Morningside Campus*                              *Medical Center*

535 West 116th Street                            650 West 168th Street

101 Low Library                                  109 Black Building

New York, NY 10027                               New York, NY 10032

Emergency:           (212) 854-5555             Emergency:           (212) 305-7979

Non-Emergency:       (212) 854-2797             Non-Emergency:       (212) 305-8100

**Ombuds Office** (confidential resource)

https://ombuds.columbia.edu/

*Morningside Heights Office*                      *CUIMC Office*

660 Schermerhorn Extension, Mail Code 5558       154 Haven Avenue

1200 Amsterdam Avenue                            Room 412

Telephone:           (212) 854-1234             Telephone:           (212) 304-7026

Fax Number:          (212) 854-6046             Fax Number:          (212) 854-6046



## Off-Campus Resources for Staff and Faculty

**Employee Assistance Program (EAP)**

Call Toll-Free 24/7:     (888) 673-1153

TTY:                    (800) 256-1604

[www.hriworld.com](www.hriworld.com)

Username:              Columbia

Password:              eap

**NYC Domestic Violence Hotline** (24 hours)

(800) 621-HOPE (4673)

**Gay and Lesbian Anti-Violence Project** (24 hours)

(212) 714-1141

**Crime Victims Treatment Center**

(212) 523-4728

[https://www.cvtcnyc.org](https://www.cvtcnyc.org)

**Mount Sinai Morningside**

1111 Amsterdam Ave. at 113th St.

Emergency Room: 212-523-3335

**New York Presbyterian/CUIMC Emergency Room**

(212) 305-6204

**Safe Horizon Hotline**

(212) 577-7777

**Local Law Enforcement**

New York City Police Department

Emergency 911

26th Precinct                                    (212) 678-1311

Special Victims Division Hotline                 (646) 610-7272

**NY County District Attorney's Office**

Domestic Violence & Child Abuse Hotline          (212) 335-4308

Sex Crimes Hotline                               (212) 335-9373

Special Victims Bureau at the Manhattan Family Justice Center (212) 335-4300



# Appendix D: Complainants and Respondents Rights

## Rights of Employee Complainants and Respondents

Throughout the process described in the EOAA Policies & Procedures, both the Complainant and Respondent have the following rights:

- To respect, dignity, and sensitivity.
- To appropriate support from the University.
- To privacy to the extent possible consistent with applicable law and University Policy.
- To information about applicable University policies.
- To the presence of an advisor throughout the process.
- To an opportunity to challenge the investigator(s), disciplinary officer, and/or appeal officer for a possible conflict of interest.
- To a prompt and thorough investigation of the allegations.
- To adequate time to review and comment on a summary of their investigative interview.
- To refrain from making self-incriminating statements. Employees should understand, however, that the decision not to respond honestly and completely to questions asked during the investigation may result in disciplinary action up to and including termination of employment.
- To report the incident to law enforcement at any time.
- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings.
- To notification in writing of the case resolution, including the outcome of any appeal.

## Rights of Student Complainants

- To respect, dignity, and sensitivity.
- To appropriate support from the University.
- To privacy to the extent possible consistent with applicable law and University Policy.
- To information about applicable University policies.
- To the presence of an advisor throughout the process.
- To an opportunity to challenge the investigator(s), disciplinary officer, and/or the appeal officer for a possible conflict of interest.
- To participate or to decline to participate in the investigation process. However, a decision to refrain from participating in the process either wholly or in part will not prevent the process from proceeding with the information available.
- To a prompt and thorough investigation of the allegations.
- To adequate time to review and comment on a summary of their investigative interview.
- To refrain from making self-incriminating statements.
- To report the incident to law enforcement at any time.



- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings.
- To notification in writing of the case resolution, including the outcome of any appeal.
- All students also have the rights set forth in the Students' Bill of Rights established by New York State law (*see* Appendix D and E).



# Appendix E: Students' Bill of Rights

All students have the right to:

1. Make a report to local law enforcement and/or state police;

2. Have disclosures of domestic violence, dating violence, stalking, and sexual assault treated seriously;

3. Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and/or criminal justice process free from pressure by the University;

4. Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard;

5. Be treated with dignity and to receive from Columbia courteous, fair, and respectful health care and counseling services, where available;

6. Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations;

7. Describe the incident to as few University representatives as possible and not be required to unnecessarily repeat a description of the incident;

8. Be protected from retaliation by the University, any student, the accused and/or the respondent, and/or their friends, family, and acquaintances within the jurisdiction of the University;

9. Access to at least one level of appeal of a determination;

10. Be accompanied by an advisor of choice who may assist and advise a reporting individual, accused, or respondent throughout the judicial or conduct process including during all meetings and hearings related to such process; and

11. Exercise civil rights and practice of religion without interference by the investigative, criminal justice, or judicial or conduct process of the University.



# Appendix F: Statement of Compliance with Federal, State, and Local Laws Promoting Equal Opportunity, Prohibiting Discrimination and Harassment, and Authorizing Affirmative Action

In accordance with all applicable laws and pursuant to its own policies and operating procedures, Columbia University provides for equal opportunity, prohibits unlawful discrimination and harassment, and takes affirmative action seriously. The applicable laws include, but are not necessarily limited to:

- **Title VI of the Civil Rights Act of 1964**, as amended, prohibits discrimination against any person on the basis of race, color, or national origin in programs or activities receiving federal financial assistance.
- **Title VII of the Civil Rights Act of 1964**, as amended, prohibits employment discrimination against any person because of race, color, religion, sex (including sexual orientation and gender identity), pregnancy status or national origin.
- **Title IX of the Education Amendments Act of 1972**, as amended, prohibits discrimination on the basis of sex in the conduct or operation of a school's educational programs or activities, including employment in these programs and activities.
- **Violence Against Women Act**, as amended, federal law responding to violence against women, including with respect to domestic violence, dating violence, and stalking.
- **Equal Pay Act of 1963** prohibits discrimination on the basis of sex in rates of pay.
- **Lilly Ledbetter Fair Pay Act of 2009** provides that each paycheck which delivers discriminatory compensation under Title VII is a wrong actionable under federal equal employment opportunity statutes regardless of when the discrimination began.
- **Executive Order 11246**, as amended, prohibits discrimination in employment because of race, color, religion, sex, or national origin and requires affirmative action to ensure equality of opportunity in all aspects of employment.
- **Executive Order 13665** prohibits discrimination against employees or applicants because they inquired about, discussed, or disclosed their own pay or the pay of another employee or applicant.
- **Sections 503 and 504 of the Rehabilitation Act of 1973** require a federal contractor to take affirmative action to employ and advance in employment qualified workers with disabilities and prohibits the exclusion of any person solely on the basis of a disability from participation in or access to benefits of any federally financed program or activity; it also prohibits discrimination against any person solely on the basis of disability in any federally financed program or activity.
- **Americans with Disabilities Act of 1990** prohibits discrimination in public accommodation and in employment against a qualified person with a disability and requires an employer to provide qualified applicants and employees with reasonable accommodations.



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

- **Age Discrimination in Employment Act of 1967**, as amended, prohibits discrimination in employment on the basis of age. The Age Discrimination Act of 1975 prohibits discrimination on the basis of age in programs and activities receiving federal financial assistance.
- **Uniformed Services Employment and Reemployment Rights Act (USERRA)** prohibits discrimination in employment based on past, current, or future military obligations.
- **Vietnam Era Veterans' Readjustment Assistance Act of 1974** and the Veterans Employment Opportunities Act of 1998, as amended, prohibit job discrimination and require affirmative action to employ and advance in employment qualified special disabled veterans, veterans of the Vietnam Era, recently separated veterans, and any other veterans who served on active duty during a war or in a campaign or expedition for which a campaign badge has been authorized.
- **Immigration Reform and Control Act of 1986** prohibits employers from discriminating on the basis of citizenship status. The prohibition extends to employers who hire only U.S. citizens or U.S. citizens and green card holders as well as to employers who prefer to employ unauthorized workers or temporary visa holders rather than U.S. citizens and other workers with employment authorization.
- **The Small Business Investment Act of 1958**, as amended, Section 15(g)(1), requires federal contractors to afford maximum practicable business opportunities to Small Business Concerns, including businesses owned by disadvantaged individuals, disabled veterans, and women.
- **New York Education Law, Articles 129-A and 129-B**, establishes state laws regarding sexual assault, domestic violence, dating violence, and stalking on college and university campuses
- **The New York Executive Law, Article 15, Section 296(1)**, prohibits discrimination against any person in employment because of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, marital status, or arrest record. Section 296(4) prohibits an educational institution from denying the use of its facilities to anyone otherwise qualified or permitting harassment of a student or applicant on the basis of color, race, religion, disability, national origin, sexual orientation, military status, sex, age, and marital status.
- **The New York Labor Law, Section 194**, prohibits discrimination on the basis of sex in rates of pay.
- **The New York City Human Rights Law**, Chapter 1, Section 8-107, makes it an unlawful discriminatory practice for an employer to discriminate against any person because of their actual or perceived age, alienage or citizenship status; arrest or conviction record; caregiver status; color; credit history; creed; disability; familial status; gender (sex); gender identity; genetic predisposition or carrier status; lactation accommodation; marital status; national origin; pregnancy; religion; salary history; sexual or reproductive health decisions; sexual



orientation; status as a victim of domestic violence, stalking, or sex offenses; unemployment status; veteran or active military status.

- New York State law prohibits discrimination and retaliation in employment based on an employee's or an employee's dependent's **reproductive health decision** making, including but not limited to, the decision to use or access a particular drug, device or medical service ("reproductive health decisions").

It is an unlawful employment practice for University officials to access an employee's personal information regarding their or their dependent's reproductive health decisions without the employee's prior informed affirmative written consent, or to require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health decisions.

Any employee who feels there has been a violation of this policy should report their concern to EOAA, which will investigate and take appropriate remedial action. An employee may also file a private legal action and can seek remedies to the extent available under applicable law. Discrimination and retaliation against employees who exercise rights under this policy is prohibited.



COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

# Appendix G: Legal Protections And External Remedies

The University is committed to responding quickly and effectively to any internal report of discrimination and harassment, and hopes that employees will be comfortable coming forward and allowing us to pursue an internal investigation of the matter.

Discrimination and harassment are not only prohibited by Columbia University but are also prohibited by state, federal, and, where applicable, local law.

Aside from the internal process at the University, employees and students may also choose to pursue legal remedies with the following governmental entities. While a private attorney is not required to file a complaint with a governmental agency, you may seek the legal advice of an attorney.

In addition to those outlined below, employees in certain industries may have additional legal protections.

## Civil Rights Act of 1964

The United States Equal Employment Opportunity Commission (EEOC) enforces federal anti-discrimination laws, including Title VII of the 1964 federal Civil Rights Act (codified as 42 U.S.C. § 2000e et seq.). An individual can file a complaint with the EEOC anytime within 300 calendar days from the harassment. There is no cost to file a complaint with the EEOC. The EEOC will investigate the complaint, and determine whether there is reasonable cause to believe that discrimination has occurred, at which point the EEOC will issue a Right to Sue letter permitting the individual to file a complaint in federal court.

The EEOC does not hold hearings or award relief, but may take other action including pursuing cases in federal court on behalf of complaining Parties. Federal courts may award remedies if discrimination is found to have occurred. In general, private employers must have at least 15 employees to come within the jurisdiction of the EEOC.

An employee alleging discrimination at work can file a "Charge of Discrimination." The EEOC has district, area, and field offices where complaints can be filed. Contact the EEOC by calling 1-800-669-4000 (TTY: 1-800-669-6820), visiting their website at www.eeoc.gov or via email at info@eeoc.gov.

If an individual filed an administrative complaint with DHR, DHR will file the complaint with the EEOC to preserve the right to proceed in federal court.

## New York State Human Rights Law (NYSHRL)

The Human Rights Law (HRL), codified as N.Y. Executive Law, art. 15, § 290 et seq., applies to all employers in New York State, and protects employees, paid or unpaid interns and non-employees, regardless of immigration status. A complaint alleging violation of the Human Rights Law may be filed either with the Division of Human Rights (DHR) or in New York State Supreme Court.


COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

Complaints with DHR may be filed any time within one year of the discrimination and any time within three years for sexual harassment. If an individual did not file at DHR, they can sue directly in state court under the HRL, within three years of the alleged discrimination or harassment. An individual may not file with DHR if they have already filed an HRL complaint in state court.

Complaining internally to the University does not extend your time to file with DHR or in court. The one year or three years is counted from the date of the most recent incident of harassment.

You do not need an attorney to file a complaint with DHR, and there is no cost to file with DHR.

DHR will investigate your complaint and determine whether there is probable cause to believe that sexual harassment has occurred. Probable cause cases are forwarded to a public hearing before an administrative law judge. If discrimination or harassment is found after a hearing, DHR has the power to award relief, which varies but may include requiring your employer to take action to stop the harassment, or redress the damage caused, including paying of monetary damages, attorney's fees and civil fines.

DHR's main office contact information is: NYS Division of Human Rights, One Fordham Plaza, Fourth Floor, Bronx, New York 10458. You may call (718) 741-8400 or visit: www.dhr.ny.gov.

Contact DHR at (888) 392-3644 or visit dhr.ny.gov/complaint for more information about filing a complaint. The website has a complaint form that can be downloaded, filled out, notarized and mailed to DHR. The website also contains contact information for DHR's regional offices across New York State.

**NYC Human Rights Law (NYCHRL)**
Many localities enforce laws protecting individuals from harassment and discrimination. An individual should contact the county, city or town in which they live to find out if such a law exists. For example, employees who work in New York City may file complaints of harassment and discrimination with the New York City Commission on Human Rights. Contact their main office at Law Enforcement Bureau of the NYC Commission on Human Rights, 40 Rector Street, 10th Floor, New York, New York; call 311 or (212) 306-7450; or visit www.nyc.gov/html/cchr/html/home/home.shtml.

The deadline for complainants to file complaints with the NYC Commission on Human Rights concerning gender-based harassment under the NYC Human Rights Law is three years after the alleged harassing conduct occurred.

**U.S. Department of Education, Office for Civil Rights**
http://www2.ed.gov/about/offices/list/ocr/index.html?src=oc



EQUAL OPPORTUNITY AND
AFFIRMATIVE ACTION

**U.S. Department of Justice, ADA Information and Technical Assistance**
https://www.ada.gov/

**U.S. Department of Labor, Office of Federal Contract Compliance Programs**
https://www.dol.gov/ofccp/

**U.S. Department of Labor, Veterans' Training and Employment Service**
http://www.dol.gov/vets/



### Office of Equal Opportunity and Affirmative Action

The following resources are available to you:

**Public Safety** -- http://www.columbia.edu/cu/publicsafety/

• In case of emergency (212) 854-5555


**Columbia University Sexual Respect website** – https://sexualrespect.columbia.edu
• Includes a host of information about resources, confidential support, and University policies and procedures

**University Ombuds Office** -- http://www.columbia.edu/cu/ombuds/
• Columbia (212) 854-1234
• CUMC (212) 304-7026

**Employee Assistance Program** -- http://worklife.columbia.edu/employee-assistance-program
• (888) 673-1153

**Law Enforcement and Off-Campus General Resources**
• NYPD Police-Sex Crimes Unit (212) 267-RAPE/7273
• Special Victims Bureau, Manhattan Family Justice Center (212) 335-4300
• NYC Domestic Violence Hotline (800) 621-HOPE/4673
• NYC Gay & Lesbian Anti-Violence Project (212) 714-1141
• St. Luke's Hospital Crime Victims Treatment Center (212) 523-4728
• Safe Horizon Crime Victims Hotline (212) 577-7777
• Safe Horizon Anti-Stalking Program (866) 689-HELP

**Off-Campus Mental Health Resources**
• The Access Center at St. Luke's-Roosevelt Hospital (212) 523-6491
• Metropolitan Center for Mental Health (212) 864-7000
• Jewish Board of Family and Children's Services (212) 582-9100
• Institute for Contemporary Psychotherapy (212) 595-3444

### Office of Equal Opportunity and Affirmative Action

Please be advised that throughout the process described in the Sexual Misconduct Procedures of the Policy (http://eoaa.columbia.edu/eoaa-policies-and-procedures), you have the following rights:

- To respect, dignity, and sensitivity.
- To appropriate support from the University.
- To privacy to the extent possible consistent with applicable law and University policy.
- To information about applicable University policies.
- To the presence of an advisor throughout the process in cases of sexual assault, domestic violence, dating violence, and stalking.
- To an opportunity to challenge the investigator(s), disciplinary officer, and/or appeal officer for a possible conflict of interest.
- To a prompt and thorough investigation of the allegations.
- To adequate time to review and comment on a summary of his or her investigative interview.
- To refrain from making self-incriminating statements.  Employees should understand, however, that the decision not to respond honestly and completely to questions asked during the investigation may result in disciplinary action up to and including termination of employment.
- To report the incident to law enforcement at any time.
- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings.
- To notification in writing of the case resolution, including the outcome of any appeal.